UNITED STATES *v.* NEDERLANDSCH–AMERI-
KAANSCHE STOOMVAART MAATSCHAPPIJ
(HOLLAND–AMERICA LIJN.)

### APPEAL FROM THE COURT OF CLAIMS.

No. 53. Argued January 28, 1920; restored to docket for reargument
October 11, 1920; reargued November 17, 1920.—Decided Decem-.
ber 6, 1920.

A foreign steamship company alleged that, under duress practiced by
the immigration authorities, it paid bills rendered by them under
color of the Immigration Act, for maintenance and medical care
furnished by the United States to certain immigrants who, after
landing from the company's ships, were temporarily detained before
being admitted to the country, and it claimed reimbursement under
the Tucker Act, upon the ground that the exactions were in violation
of its rights as an alien subject, secured by the Constitution, treaties
and laws of the United States. *Held*, that the claim, being founded
on alleged torts of federal officials, was not within the Tucker Act or
the jurisdiction of the Court of Claims. P. 155.
53 Ct. Clms. 522, reversed.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Davis* for the United
States.

*Mr. Howard Mansfield,* with whom *Mr. Lucius H. Beers*
and *Mr. Franklin Grady* were on the briefs, for ap-
pellee:

The claim sued on is founded both upon a law of Con-
gress and upon a regulation of an executive department of
the Government, and the Court of Claims clearly had
jurisdiction. *Patton* v. *Brady,* 184 U. S. 608, 611; *Dooley*
v. *United States,* 182 U. S. 222; *United States* v. *Lynah,*
188 U. S. 445.

The cases cited by the Government hold, what is not disputed, that Congress has not permitted suits against the Government for mere torts, nor for tortious acts of its representatives, unless the claim is founded upon the Constitution, some law of Congress, or some regulation of an executive department. Attention is not drawn to any decision of this court holding that when an officer or other representative of the United States, professing to act under a law of Congress, wrongfully exacts money from an individual, and pays the money into the United States Treasury, the United States has not authorized a suit for the recovery of such money. Distinguishing: *Ball Engineering Co.* v. *White & Co.*, 250 U. S. 46; *Tempel* v. *United States*, 248 U. S. 121; *Basso* v. *United States*, 239 U. S. 602; *United States* v. *Buffalo Pitts Co.*, 234 U. S. 228; *Peabody* v. *United States*, 231 U. S. 530; *Crozier* v. *Krupp*, 224 U. S. 290; *Harley* v. *United States*, 198 U. S. 229; *Russell* v. *United States*, 182 U. S. 516; *Schillinger* v. *United States*, 155 U. S. 163; *Langford* v. *United States*, 101 U. S. 341; *Gibbons* v. *United States*, 8 Wall. 269.

These cases hold no more than that the United States cannot be sued for a tort, unless the case arises (1) under the Constitution, (2) under a law of Congress, or (3) under a regulation of an executive department.

No liability was imposed by law upon claimant to pay the hospital expenses of aliens ultimately admitted to the United States.

Claimant was under no contract obligation to pay such expenses.

These expenses were payable out of the head tax fund, provided by Congress for that purpose, and ample in amount.

The payments having been involuntarily made under compulsion and duress, claimant is entitled to recover the amounts paid.

MR. JUSTICE DAY delivered the opinion of the court.

A suit was brought in the Court of Claims by the Holland-American Line to recover from the United States for the cost of the maintenance and medical care furnished by the United States for certain aliens brought by the plaintiff to this country on the steamers of its line which it had been required to pay.

The petition sets forth that the United States immigration officials temporarily detained some aliens in hospitals because they were alleged to be suffering from temporary illness, or accompanied aliens who were so suffering, and subsequently permitted them to enter the country; the aliens were detained and subsequently admitted under the act of Congress known as the Immigration Act, passed February 20, 1907, c. 1134, 34 Stat. 898. It is stated that the Secretary of Commerce and Labor and the Commissioner General of Immigration, and their subordinates, claiming to act under the authority of the Immigration Act, rendered to the petitioner from month to month bills for the hospital treatment and maintenance of the aliens so detained and subsequently admitted. Certain regulations of the Commissioner General of Immigration are cited; and it is alleged that the United States officials threatened that, if the bills were not paid, thereafter all aliens so brought to this country would be held on board ship until their application for admission to the United States should be finally adjudicated. It is set forth that on all vessels arriving in the port of New York there were aliens who were temporarily detained and subsequently admitted; that detention on board ship would have delayed the sailing of petitioner's vessels for periods varying from a few days to several weeks. The threats were actually carried out, at least in one instance, and if vessels were so detained the result would have been not merely great inconvenience and financial loss to the petitioner,

but a complete disruption of oceanic commerce in the port of New York and the United States. "Consequently, the petitioner paid, under duress and involuntarily, the bills, when rendered."

It is alleged that the exaction of such payments of the petitioner, and the making of such threats, were entirely without warrant of law; that the Immigration Act provides that, where a suitable building is used for the detention and examination of aliens, the immigration officials shall there take charge of such aliens and the transportation companies shall be relieved of the responsibility for their detention thereafter; that there was in the port of New York a suitable building for the detention and examination of aliens; that the Immigration Act required petitioner to pay the United States $4.00 for each alien entering the United States on its vessels; that the aliens whose hospital and maintenance expense bills were rendered to and paid by the petitioner, were detained and examined and subsequently admitted to the United States pursuant to the requirements of the Immigration Act; that special appropriations have been made for all expenses of the enforcement of the laws regulating the immigration of aliens into the United States, so that there has always been an available fund in the United States Treasury for the payment of the expenses of regulating the immigration of aliens into the United States, including the hospital bills referred to above.

Petitioner recites disagreement, as to such charges, between the Secretary of Commerce and Labor and the steamship companies transporting aliens to the United States, and sets forth that an action was brought by the United States in the United States District Court for the Southern District of New York against the petitioner, to recover hospital charges for aliens brought to the port of New York and temporarily detained and subsequently admitted. A judgment in favor of the Company was

subsequently reviewed by the Circuit Court of Appeals
and was there affirmed. (See 212 Fed. Rep. 116, affirmed
by an equally divided court, 235 U. S. 686.)

It is further alleged that the exaction from the claimant
of the above mentioned hospital charges under duress was
in violation of its rights and privileges secured to peti-
tioner as a subject of the Kingdom of the Netherlands
under the Constitution of the United States, by the
treaties between the United States and the Kingdom of
the Netherlands and the laws of the United States; that
the amounts thus unlawfully exacted from the claimant
were remitted to the Commissionet of Immigration at the
port of New York as required by him.

There being no demurrer, plea, answer, counterclaim,
set-off, claim of damages, demand, or defense in the
premises on the part of the United States, the Court of
Claims directed a general traverse under the rules of the
court, and afterwards made findings of fact, and, sub-
stantially following the decision of the Circuit Court of
Appeals, *supra*, held the United States liable for the
payments exacted.

As to the claim that the plaintiff had bound itself by
contract to pay these charges, the court held that the
claimant was coerced into making the contract by threats
of the defendant which would have destroyed the plain-
tiff's business if ever executed.

The Government contends that the claim thus presented
was one sounding in tort, and, consequently, not within
the jurisdiction of the Court of Claims, and that the
petition should have been dismissed.

The jurisdiction of the Court of Claims rests upon § 145
of the Judicial Code, reënactment of the Tucker Act of
March 3, 1887, c. 359, 24 Stat. 505. The jurisdiction
conferred includes:

"All claims (except for pensions) founded upon the
Constitution of the United States or any law of Congress,

upon any regulation of an Executive Department, upon any contract, express or implied, with the Government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States either in a court of law, equity, or admiralty if the United States were suable."

We think that the statement of the substance of the petitioner's claim, as above set forth, shows that it rested upon payments alleged to have been made under duress because of the wrongful and tortious acts of officials of the United States Government acting without authority of law in coercing the claimant to pay the sums demanded.

In many decisions of this court it has been held that by the provisions of the Tucker Act the Government did not subject itself to liability for the torts or wrongful acts of its officers. *Gibbons* v. *United States*, 8 Wall. 269; *Morgan* v. *United States*, 14 Wall. 531; *Hill* v. *United States*, 149 U. S. 593; *Schillinger* v. *United States*, 155 U. S. 163; *United States* v. *Buffalo Pitts Co.*, 234 U. S. 228; *Tempel* v. *United States*, 248 U. S. 121; *Ball Engineering Co.* v. *White & Co.*, 250 U. S. 46.

The appellee relies upon and quotes certain expressions found in the opinion delivered in *Dooley* v. *United States*, 182 U. S. 222. In *Basso* v. *United States*, 239 U. S. 602, suit was brought in the Court of Claims for the illegal arrest and imprisonment of the claimant upon a charge of having imported goods from the United States into Porto Rico without having made entry of the same under an act of Congress which the appellant alleged was not in force in Porto Rico. It was alleged that the court was without jurisdiction, and that, therefore, the trial, conviction and sentence of imprisonment deprived him of his liberty without due process of law in violation of the Constitution. The United States filed a general

traverse of the petition, and subsequently moved to dismiss upon the ground that the court had no jurisdiction as the action sounded in tort. This motion was sustained in the Court of Claims, and an appeal taken to this court. Speaking of the contention of the appellant that the Court of Claims had jurisdiction, this court said:

"He, however, contends that the Court of Claims has jurisdiction under the Tucker Act over claims *ex delicto* founded upon the Constitution of the United States. And, this, he further contends, is supported by the recent decisions of this court, and relies especially upon *Dooley* v. *United States*, 182 U. S. 222.

"But that case did not overrule *Schillinger* v. *United States*, 155 U. S. 163, which, counsel says, holds directly contrary to his contention and that he has not the ingenuity to suggest how the court can now decide the case at bar in appellant's favor without at least by implication overruling the *Schillinger Case*. We are not disposed to overrule the case, either directly or by implication. . . .

"The *Dooley Case* and cases subsequent to it which are relied upon by appellant concerned the exaction of duties or taxes by the United States or its officers or property taken by the Government for public purposes. In such cases jurisdiction in the Court of Claims for the recovery of the duties and taxes or for the value of the property taken was declared.

"In the case at bar (assuming as true all that is charged) there was a wrong inflicted, if a wrong can be said to have been inflicted by the sentence of a court legally constituted after judgment upon issues openly framed by the opposing parties both of fact and the applicable law, whether that law was §§ 2865 and 3082 of the Revised Statutes or the Constitution of the United States. But conceding that a wrong was inflicted through these judicial forms, the case nevertheless is of different character from the *Dooley*

*Case,* as was also the *Schillinger Case.* The latter case passed upon the jurisdiction of the Court of Claims in actions founded on tort and declared the general principle to be, based on a policy imposed by necessity, that governments are not liable (155 U. S., p. 167), 'for unauthorized wrongs inflicted on the citizen by their officers, though occurring while engaged in the discharge of official duties.' And it was further said (p. 168): 'Congress has wisely reserved to itself the right to give or withhold relief where the claim is founded on wrongful proceedings of an officer of the Government.' *Gibbons* v. *United States,* 8 Wall. 269, 275; *Morgan* v. *United States,* 14 Wall. 531, 534."

The principle, reaffirmed in the case just quoted, is applicable here for the reason that the claim presented sounded in tort, and was in substance an action to recover for the wrongful acts of the United States officials in compelling the claimant to pay under duress and without authority of law the sums sued for. Following the well-established construction of the Tucker Act, as declared in many cases in this court, we think that the Court of Claims should have dismissed the petition because it presented a claim not within its jurisdiction. The judgment of the Court of Claims is reversed, and the cause remanded to that court with instructions to dismiss the petition.

                                        *Reversed.*