# COMPAGNIE GENERAL TRANSATLAN-TIQUE v. UNITED STATES (two cases).

District Court, S. D. New York. July 7, 1927.

1. **Courts** ⟲⟹426—Action for deposit taken for fine for bringing illiterate immigrant held maintainable as "founded upon * * * law of Congress" (Tucker Act being 28 USCA § 41 [20]; Immigration Law 1917, § 9 [Comp. St. § 4289¼e]).

Where sum is deposited to secure payment of prospective fine for violation of Immigration Law 1917, § 9 (Comp. St. § 4289¼e), by bringing an illiterate alien into the United States, and the fine is thereafter unlawfully imposed and the deposit is paid into the Treasury of the United States, an action to recover the sum is maintainable as an action "founded upon * * * law of Congress," within the meaning ·of the Tucker Act (28 USCA § 41 [20]; Comp. St. § 991 [20]), providing that the United States District Court shall have jurisdiction of claims against the United States founded upon any law of Congress.

2. **Courts** ⟲⟹426—Action for deposit, taken for fine for bringing quota immigrant specified as nonquota immigrant in his visa held maintainable as "founded upon * * * law of Congress"; "founded" (Tucker Act, being 28 USCA § 41[20]; Immigration Act 1924 [8 USCA § 216]).

Where sum is deposited to secure prospective fine under Immigration Act 1924, § 16 (a) and (b), being 8 USCA § 216, for bringing into the United States a quota immigrant having an immigration visa, the visa in which specified him as a nonquota immigrant, and a fine is thereafter levied and is unlawful because the immigrant is a nonquota immigrant as returning from temporary visit abroad under section 4 (b), being 8 USCA § 204, or as temporary visitor, and deposit is paid into United States Treasury, an action to recover the sum is "founded upon * * * law of Congress," within the Tucker Act (28 USCA § 41 [20]; Comp. St. § 991 [20]), providing that the United States District Court shall have jurisdiction of claims against the United States founded upon any law of Congress; "founded" meaning reasonably involving application of law of Congress.

At Law. Two actions by Compagnia General Transatlantique against the United States. On motions of defendant to dismiss. Motions denied.

Joseph P. Nolan, of New York City, and Roger O'Donnell, of Washington, D. C., for plaintiff in action No. 1.

Joseph P. Nolan and John M. Lyons, both of New York City, for plaintiff in action No. 2.

Emory R. Buckner, U. S. Atty., of New York City (Frank Chambers, Asst. U. S. Atty., of New York City, of counsel), for the United States.

AUGUSTUS N. HAND, District Judge. The first of the above two actions was brought

to recover $200, which was paid to the collector of customs for the port of New York, to be held as a special deposit pending determination by the Secretary of Labor as to the assessment of a fine amounting to $200 on account of bringing an illiterate alien to the United States. This alien was at first excluded as illiterate by the inspection officers of the United States immigration service, but thereafter granted permanent admission.

The plaintiff paid the said sum over to the collector as an alternative to threatened refusal of clearance of its vessel unless and until such payment was made. Thereafter the collector, acting pursuant to an order issued at the direction of the United States Secretary of Labor, and at the special instance and direction of the Commissioner of Immigration for the port of New York, paid the said sum of $200 into the Treasury of the United States as an alleged immigration fine. The payment into the Treasury was made because the defendant was unmindful of the permanent admission of the alien.

Section 9 of the Immigration Laws (39 Stat. 880 [Comp. St. § 4289¼c]) provides that, if it shall appear to the satisfaction of ·the Secretary of Labor that the illiteracy of an immigrant might have been detected by the exercise of reasonable precaution prior to the departure of such alien from a foreign port, such person shall pay to the collector of customs of the customs district in which the port of arrival is located the sum of $200 for each violation. The section also says that: "* * * No vessel shall be granted clearance papers pending the determination of the question of the liability to the payment of such fines, or while the fines remain unpaid, nor shall such fines be remitted or refunded: Provided, that clearance may be granted prior to the determination of such questions upon the deposit of a sum sufficient to cover such fines."

The second case contains three causes of action. The first alleges that the plaintiff brought to the United States an alien named Taboada, who was ordered excluded and deported by the Secretary of Labor on the ground that he was a quota immigrant and not a nonquota immigrant as specified in his visa. The plaintiff was advised by the Commissioner of Immigration that upon the disclosed facts a fine of $1,000 had been incurred, and gave plaintiff 30 days within which to submit evidence to show why such fine should not be collected; that plaintiff submitted such evidence showing that he came under section 4(b) of the Immigration Law (43 Stat. 155 [8 USCA § 204]), and

was "an immigrant previously lawfully admitted to the United States, who is returning from a temporary visit abroad"; that thereafter, notwithstanding the alien was returning from a temporary visit abroad, the plaintiff was notified by the defendant that the Secretary of Labor had directed that a fine be imposed, which fine of $1,000 was paid to the collector of customs under protest, solely to avoid damage due to delay or refusal of clearance of the plaintiff's vessel.

It is further alleged that no statute of the United States was violated, and that the act of the Secretary of Labor in imposing a fine was without lawful authority and arbitrary, and that the defendant received said money to the use of the plaintiff.

The second and third causes of action are similar in principle, though having somewhat different facts. The law under which the fines were imposed in the second case was section 16 (a) and (b) of the Immigration Act of 1924 (8 USCA § 216), which reads as follows:

"Sec. 16 (a). It shall be unlawful for * * * any transportation company, * * * to bring to the United States by water from any place outside thereof (other than foreign contiguous territory) * * * any quota immigrant having an immigration visa the visa in which specifies him as a nonquota immigrant.

"(b) If it appears to the satisfaction of the Secretary of Labor that any immigrant has been so brought, such * * * transportation company * * * shall pay to the collector of customs of the customs district in which the port of arrival is located the sum of $1,000 for each immigrant so brought. * * * No vessel shall be granted clearance pending the determination of the liability * * * except that clearance may be granted prior to the determination of such question upon the deposit of an amount sufficient to cover such sums. * * * *"

[1] The actions are brought under the Tucker Act to recover money had and received to the use of the plaintiff. The Tucker Act (28 USCA § 41 [20]; Comp. St. § 991[20]), provides:

The [United States] District Courts shall have original jurisdiction as follows: * * *

"Twentieth—Concurrent with the Court of Claims, of all claims not exceeding ten thousand dollars founded upon the Constitution of the United States or any law of Congress, * * * or upon any contract, express or implied, with the government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect to which claims the party would be entitled to redress against the United States, either in a court of law, equity, or admiralty, if the United States were suable."

The basis of the within causes of action is a "law of Congress," so that the discussion in the briefs as to whether there can be a recovery upon an implied contract is unimportant. For a long time claims to recover taxes illegally exacted have been recoverable under the first class provided for by the Tucker Act. As Justice Holmes said in United States v. Emery, Bird, Thayer Realty Co., 237 U. S. 28, 35 S. Ct. 499, 59 L. Ed. 825, when discussing a case where it was sought to recover taxes paid, under protest: "Claims like the present are 'founded upon' the revenue law." To limit the recovery in cases "founded" upon a law of Congress to cases where the law provides in terms for a recovery would make that provision of the Tucker Act almost entirely unavailable, because it would allow recovery only in cases where laws other than the Tucker Act already created a right of recovery. "Founded" must therefore mean reasonably involving the application of a law of Congress. Dooley v. United States, 182 U. S. 222, 21 S. Ct. 762, 45 L. Ed. 1074, is in accord with this reasoning. There custom duties were improperly exacted. Justice Brown there said:

"The first section" (of the Tucker Act) "evidently contemplates four distinct classes of cases: (1) Those founded upon the Constitution or any law of Congress, with an exception of pension cases; (2) cases founded upon a regulation of an executive department; (3) cases of contract, express or implied, with the government; (4) actions for damages, liquidated or unliquidated, in cases not sounding in tort. The words 'not sounding in tort' are in terms referable only to the fourth class of cases."

Now in the first case, the deposit of $200 was made by virtue of the provisions of section 9 of the Immigration Laws, was simply to secure the government for a fine, and was payable to the plaintiff as soon as a determination was made in favor of the admissibility of the alien. Here is one of the few cases where an act of Congress, to wit, section 9 of the Immigration Laws, itself creates a right in the plaintiff, so that the cause of action asserted seems clear.

[2] In the second case, all three causes of action are founded upon sections 16 (a) and (b) of the Immigration Act of 1924, and fall directly within the principles laid down.

The issues in the first two causes of action are whether the immigrants were or were not returning from a temporary visit abroad, and in the third cause of action whether the immigrant was a temporary visitor, and consequently should have been properly admitted for a limited time.

The government strenuously insists that, under the doctrine of United States v. Holland-America Lijn, 254 U. S. 148, 41 S. Ct. 72, 65 L. Ed. 193, the plaintiff cannot recover. I confess that I have had some difficulty in reconciling that decision with such cases as Dooley v. United States, 182 U. S. 222, 21 S. Ct. 762, 45 L. Ed. 1074, and United States v. Emery, Bird, Thayer Realty Co., 237 U. S. 28, 35 S. Ct. 499, 59 L. Ed. 825. There seems to be a distinction, however.

In the Holland-America Case the government required a transportation company to pay certain hospital charges for maintaining immigrants and treating them prior to their examination by immigration officials. It is clear from reading the opinion in the court below (53 Ct. Cl. 522) that, upon the admitted facts, the statute under consideration had no application.

Section 16 of the Immigration Act of 1907 (34 Stat. 903) provides:

"That where a suitable building is used for the detention and examination of aliens, the immigration officials shall there take charge of such aliens, and the transportation companies, * * * shall be relieved of the responsibility for their detention thereafter until the return of such aliens to their care."

It is apparent that the government officials in the Holland-America Case were acting outside of the statute, because, upon the finding of the Court of Claims, Ellis Island, constantly used for detention and treatment, was a "suitable building." In other words, the immigration law in no way applied to the facts. As Mr. Justice Day remarked (at page 153 [41 S. Ct. 73]):

"We think that the statement of the substance of the petitioner's claim, * * * shows that it rested upon payments alleged to have been made under duress because of the wrongful and tortious acts of officials of the United States government acting without authority in law in coercing the claimant to pay the sums demanded."

In my opinion, the present case more nearly resembles actions like United States v. Emery, Bird, Thayer Realty Co., 237 U. S. 28, 35 S. Ct. 499, 59 L. Ed. 825, allowing recovery of taxes unlawfully exacted, than United States v. Holland-America Lijn, supra, where, upon the admitted facts, there seems to have been scarcely any color of right in attempting to collect expenses of detention of aliens from the transportation company. As Mr. Justice Holmes said in the Emery Case:

"However gradually the result may have been approached in the earlier cases it now has become accepted law that claims like the present are 'founded upon' the revenue law. The argument that there is a distinction between claims 'arising under' (Judicial Code, § 24, first) and those 'founded upon' (Id. § 24, twentieth), a law of the United States, rests on the inadmissible premise that the great act of justice embodied in the jurisdiction of the Court of Claims is to be construed strictly and read with an adverse eye."

I can see no reason why the doctrine as to taxes should not be applied to penalties unlawfully exacted.

The motions of the government to dismiss are accordingly denied.