**CLAPP v. UNITED STATES.**
No. 314–52.

United States Court of Claims.
Jan. 5, 1954.

C. F. Rothenburg, Washington, D. C., for plaintiff. Charles D. Hamel, James P. Jones, and Hamel, Park & Saunders, Washington, D. C., on the brief.

George S. Leonard, New York City, with whom was Warren E. Burger, Asst. Atty. Gen., for defendant. Donald D. Webster, Washington, D. C., on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER and MADDEN, Judges.

MADDEN, Judge.

The plaintiff was, in May 1951, the owner of a vessel, the steamship *Empire Consequence,* which he was anxious to sell, he having in 1949 taken the vessel in partial payment of a debt owed him by the Alaska Transportation Company, a corporation in which the plaintiff had been interested.

On May 2, 1951, the plaintiff entered into a contract to sell the vessel to a Finnish corporation for $325,000, subject to the approval of the sale by the United States Maritime Administration, as required by section 9 of the Shipping Act of 1916, as amended, 46 U.S.C.A. § 808. On May 15 the plaintiff presented to the Maritime Administration his application for approval of the sale. The Maritime Administration thereupon requested the comments of the State Department, the Department of Defense, and the Office of International Trade, with regard to the proposed sale. In due course the Department of Defense replied that the proposed sale would not be harmful to the national defense, the State Department replied that it would not be inconsistent with the foreign policy of the United States and the Office of International Trade replied that the sale of the vessel for use in the Baltic trade would not adversely affect the foreign commerce of the United States.

The Maritime Administration concurred in the views of the other departments, and also determined that the vessel was not necessary to the United States merchant marine. It thereupon approved the plaintiff's application, but conditioned the approval upon the pay-

ment by the plaintiff to the Maritime Administration of $7,500 as "consideration for release of obligation to operate vessel under United States laws."

The plaintiff regarded himself as having become unconditionally obligated to the Finnish purchaser, by reason of the Maritime Administration's approval of his application. If he had refused to pay the $7,500, he would have, he thought, been liable to the Finnish purchaser for breach of his contract of sale. He therefore paid the $7,500, advising the Maritime Administration that he did not understand why he had to pay it, and that he would expect to get it back if the law did not justify the charge. He thereupon completed the sale to the Finnish purchaser.

On October 11, 1951, the plaintiff filed a claim with the Maritime Administration for the refund of the $7,500 with interest. The claim was denied. He filed an application for reconsideration. It was denied. He appealed to the Secretary of Commerce, in whose Department the Maritime Administration was. The appeal was denied.

In this suit the plaintiff asserts that the Maritime Administration was not authorized to demand or receive the $7,500; that he paid the money involuntarily and under duress, and that he is entitled to its refund.

■■■ The Government asserts that this court does not have jurisdiction to entertain the suit. In the discussion of the question of jurisdiction, we assume that there was no legal authority in the Maritime Administration to demand or receive the $7,500. The plaintiff says that his claim is "founded upon any Act of Congress", and that we therefore have jurisdiction under 28 U.S.C. § 1491(2). The Government says that, assuming the illegality of the exaction, the claim is one sounding in tort, as to which 28 U.S.C. § 1491(5), denies our jurisdiction.

The vessel here in question had been purchased by the plaintiff's predecessor in title from the United States Maritime Commission in 1947. Section 9 of the Shipping Act of September 7, 1916, 46 U.S.C.A. § 808, provides that a vessel so acquired cannot be sold to an alien without the approval of the Maritime Commission. Section 41 of the same statute, 46 U.S.C.A. § 839, provides:

"Whenever by section 808 * * of this title the approval of the commission (Administration) is required to render any act or transaction lawful, such approval may be accorded either absolutely or upon such conditions as the commission (Administration) prescribes."

This provision was the basis on which the Maritime Administration levied its charge upon the plaintiff, and is the basis on which the Government justifies the charge in this suit. The plaintiff asserts that this statutory provision does not authorize a money charge to be imposed as a condition upon the grant of permission to sell a ship to an alien purchaser. We are, in this discussion of the question of jurisdiction, assuming that the plaintiff is right in this regard. We have, then, an assumed situation in which officials authorized by a statute to attach to their grants conditions other than money payments, misinterpret the statute to permit the imposition of a money charge which they collect and the Government keeps. Is the claim for the refund of the money unlawfully collected a claim "founded upon any Act of Congress"?

In Cohens v. Virginia, 6 Wheat. 264, 5 L.Ed. 257, Chief Justice Marshall, in construing the Judicial Article of the Constitution and the 25th Section of the Judiciary Act said:

"A case in law or equity consists of the right of the one party, as well as the other, and may truly be said to arise under the constitution or a law of the United States whenever its correct decision depends on the construction of either."

The instant case, then, if we have jurisdiction to entertain it, would be a case "arising under a law of the United States." Is it a case "founded upon" a law of the United States?

In Dooley v. United States, 182 U.S. 222, 21 S.Ct. 762, 764, 45 L.Ed. 1074, Mr. Justice Brown said, for the court:

"In the cases under consideration the argument is made that the money was tortiously exacted; that the alternative of payment to the collector was a seizure and sale of the merchandise for the nonpayment of duties; and that it mattered not that at common law an action for money had and received would have lain against the collector to recover them back. But whether the exactions of these duties were tortious or not, whether it was within the power of the importer to waive the tort and bring suit in the court of claims for money had and received, as upon an implied contract of the United States to refund the money in case it was illegally exacted, we think the case is one within the first class of cases specified in the Tucker act, of claims founded upon a law of Congress, namely, a revenue law, in respect to which class of cases the jurisdiction of the court of claims, under the Tucker act, has been repeatedly sustained."

In Christie-Street Commission Co. v. United States, 136 F. 326, Judge Sanborn, for the Circuit Court of Appeals for the Eighth Circuit, considered in detail the pertinent decisions down to the year 1905, and followed what he concluded to be their trend. He said, 136 F. at page 331:

"It is said that there is a wide distinction between a claim which arises under, and one which is founded upon, a Constitution or a law. But after patient deliberation this distinction proves too subtle and elusive for the density of our perception. A claim is both founded upon, and it arises under, a provision of a Constitution or of a law which conditions and determines its validity. * * *"

In 1911 in United States v. Emery, Bird, Thayer Realty Co., 237 U.S. 28, 35 S.Ct. 499, 500, 59 L.Ed. 825, Mr. Justice Holmes said, for the Court:

"* * *. The jurisdiction over suits against the United States under § 24 of the Judicial Code extends to 'all claims not exceeding ten thousand dollars founded upon the Constitution of the United States or any law of Congress.' However gradually the result may have been approached in the earlier cases, it now has become accepted law that claims like the present are 'founded upon' the revenue law. The argument that there is a distinction between claims 'arising under' (Judicial Code, § 24, first) and those 'founded upon' (id. § 24, twentieth) a law of the United States rests on the inadmissible premise that the great act of justice embodied in the jurisdiction of the court of claims is to be construed strictly and read with an adverse eye. * * *"

In Carriso, Inc. v. United States, 9 Cir., 106 F.2d 707, 712, the plaintiff sued to recover surveyors' fees which the Collector of Customs had collected from it under the supposed authority of a statute which had, in fact, been repealed. The Court of Appeals, in reversing the District Court's dismissal of the complaint, said:

"Appellee contends that this is a case sounding in tort, within the meaning of § 24(20) of the Judicial Code, 28 U.S.C.A. § 41(20), and that, therefore, the District Court had no jurisdiction. This contention, which the District Court upheld, must be rejected. It appears from the complaint that the surveyors' fees in question were exacted of appellant under and pursuant to § 4186 of the Revised Statutes and were, in fact, the fees therein prescribed. Appellant's claim is that the fees were exacted, not tortiously, but illegally, in that they were exacted after § 4186 had been repealed.

"Thus, in effect, appellant claims that the Collector misconstrued and misapplied § 4186, that is to say, construed it as remaining in effect after it had been repealed, and so applied it to appellant; and that, therefore, the fees should be refunded. Such a claim does not sound in tort. * * * "

In Compagnie General Transatlantique v. United States, D.C., 21 F.2d 465, 466, Judge Augustus Hand said, for the court:

"* * *. To limit the recovery in cases 'founded' upon a law of Congress to cases where the law provides in terms for a recovery would make that provision of the Tucker Act almost entirely unavailable, because it would allow recovery only in cases where laws other than the Tucker Act already created a right of recovery. 'Founded' must therefore mean reasonably involving the application of a law of Congress. * * * "

In Ross Packing Co. v. United States, 42 F.Supp. 932, 936, Judge Schwellenbach of the United States District Court for the Eastern District of Washington, Southern Division, said:

"There can be no doubt as to the similarity between the Carriso case and this one. In each the Government received money to which it was not entitled. There, the official misconstrued the law by construing it to be in effect after it had been repealed. Here, the Board misconstrued the law by construing that it had power to inflict a penalty on the plaintiff. In neither case was there any compulsion brought upon the plaintiff to make payment except the necessity of complying with an order of a legally constituted government official or agency. In each case the act of the government's agents was illegal. Clearly, if the acts of the Collector in the Carriso case were not tortious, then the action of the Board here was not tortious. There can be no essential difference between an act which is unauthorized because the power to do it has been repealed and one which is unauthorized because such power was not given by the law in the first place."

We have quoted at length from the cases because we think they show a feeling of impatience, which we share, on the part of courts when confronted with situations where the Government has the citizen's money in its pocket, and pleads the illegal acts of its officials as an excuse for keeping it there. We think the observation of Mr. Justice Frankfurter in Keifer & Keifer v. Reconstruction Finance Corporation, 306 U.S. 381, 390, 59 S.Ct. 516, 518, 83 L.Ed. 784, is pertinent, though not directly in point:

"* * * Congress has provided for not less than forty * * * corporations discharging governmental functions, and without exception the authority to-sue-and-be-sued was included. Such a firm practice is partly an indication of the present climate of opinion which has brought governmental immunity from suit into disfavor, partly it reveals a definite attitude on the part of Congress which should be given hospitable scope. * * * "

We recognize, of course, that the case of United States v. Holland-American Line, 254 U.S. 148, 41 S.Ct. 72, 65 L.Ed. 193, and this court's decision in Wood v. United States, 61 Ct.Cl. 192, point in the other direction. In the evolution of a principle as fundamental as the one here involved, we think it is not unnatural that the course of development should not be perfectly regular and uninterrupted. From our quotation above from Mr. Justice Holmes' opinion in Emery, Bird, Thayer Realty Co., supra, we learn that the result reached there had been arrived at gradually. Our best estimate of the present law is that a claim to recover an illegal exaction made by officials of the Government, which exaction is based upon a power supposedly conferred by a statute, is a claim "founded upon any Act of Congress".

The Government urges that if the collection of the money in question from the plaintiff was wrongful, it was a tort, and therefore outside our jurisdiction under 28 U.S.C. § 1491(5). It has not explained the nature of the tort, and we have difficulty in fitting it into the categories of torts with which we are familiar. It might rather be a claim for damages, "not sounding in tort" of which Section 1491(5) gives us jurisdiction. But we do not so decide. We suppose that the exceptions recited in Section 2680(a) of 28 U.S.C., in the Federal Tort Claims Act, exempts the Government from liability on this claim as a tort claim. If so, the plaintiff's right, if he has one, must be enforced in the instant suit.

■ We now consider whether our assumption, made in order to pose the question of jurisdiction, was correct, i. e., whether the exaction of the $7,500 from the plaintiff was without legal justification. The plaintiff urges that the purpose of the Shipping Act of 1916 in lodging in the Maritime Administration the authority to grant or deny permission to sell ships to aliens was to foster the merchant marine of the United States, after being assured that our national defense and our foreign policy would not be harmed by the transfer. We think the plaintiff is right. When then, the Maritime Administration had resolved all these questions in favor of the sale, the imposition of the charge of $7,500 seems to have been irrelevant. The Government points to Section 41 of the Act, which section we have quoted above. Taken literally that section would permit the Administration to impose any condition whatever, however irrelevant. The Government does not urge such an interpretation of Section 41. It justifies the charge on the ground that the Maritime Administration had, in 1947, sold the ship here in question to the plaintiff's predecessor in title, on bids which were limited to domestic bidders; that by so restricting the circle of potential purchasers the Government had lost the chance of possibly receiving a higher price from an alien purchaser;

that when the Government in 1951 permitted the plaintiff to take advantage of the higher price of the foreign market, it was right that the Government should get some reimbursement for the sacrifice which it had made when it sold the ship in 1947.

We think that the reason the offer of the sale of the ship in 1947 was limited to domestic bidders was not to enable some domestic bidder to acquire the ship at a low price. It was so limited because the Maritime Administration was, at that time, unwilling that the ship should be sold to an alien at any price. By 1951, the reasons for this restriction were no longer present and the Maritime Administration was willing that the ship should be sold abroad. The price had nothing to do with either the restriction in 1947, or its removal in 1951. The $7,500 charge still seems to us to have been irrelevant.

■ The communications of the Maritime Administration to the plaintiff, denying his claim to the refund of his money, speak of the money as having been paid for the release of the plaintiff from the obligation to operate the ship only under United States registry or enrollment or license. They speak of the payment as a consideration for the release of the plaintiff from a contract. We see no contract in this situation. Section 9 of the Shipping Act of 1916 prescribed the conditions under which a purchaser of a ship from the Government could operate it. There was nothing contractual about it. It was the law. Section 41 provided that the owner of such a ship could sell it to an alien if the Maritime Administration gave its consent. We see nothing in these provisions which justifies the requirement of a money payment for that consent to the transaction.

■ The Government says that the plaintiff is estopped to claim the refund of his $7,500 because, by paying it, he got the permission he wanted and completed his sale. Having received an advantage from making the payment, he should not now, the Government says, be

**582**

permitted to question its legality. We see nothing in this contention. We find it hard to imagine a case where the Government can take a citizen's money, by refusing him something to which he is entitled, and then keep the money on the ground of estoppel. This defense is beneath the dignity of the Government.

The plaintiff's motion for a summary judgment is granted. He may have a judgment for $7,500.

It is so ordered.