**SEATRADE CORPORATION**

v.

**UNITED STATES.**

No. 245-55.

United States Court of Claims.

Jan. 18, 1961.

------

Mark P. Schlefer, Washington, D. C., for the plaintiff. T. S. L. Perlman and Kominers & Fort, Washington, D. C., were on the briefs.

Anthony W. Gross, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

MADDEN, Judge.

The plaintiff sues to recover money which, it asserts, was illegally exacted from it by the former United States Maritime Commission upon the occasion of the plaintiff's transfer of four ships from American to foreign ownership and flag.

During the years 1947 and 1948 the plaintiff purchased from the Maritime Commission four German merchant ships which had been acquired by the United States as reparations at the end of World War II. The Commission had limited the bidding for the ships to United States citizens, and had required the purchasers to agree that the ships would be documented and operated under the United States flag. To make these foreign-built ships conform to United States standards required extensive conversion.

The plaintiff selected the one of the four ships which seemed to require the least alteration and had it converted. The cost of conversion was some $300,-000 and was several times as much as the plaintiff had expected it to be. The consequence was that the plaintiff had more than $500,000 invested in a 4,200-ton ship, when the Commission was selling 10,400-ton American-built Liberty ships for $544,000. The plaintiff operated the converted German ship but the operation was at a loss. Conversion of the other three ships would have been still more expensive, and the plaintiff laid them up. Conversion to American standards not being economically feasible, the plaintiff would have had to scrap the ships if it could not obtain permission to operate them under a foreign flag, or sell them into foreign ownership.

The plaintiff sought permission to place some of the ships under Panamanian registry. The Commission refused to give such permission. The plaintiff found a potential Danish buyer for one of the ships, but the Commission refused permission for the transfer. The plaintiff found another Danish buyer for two of the ships and offered to buy three Liberty ships from the Commission and place them in American operation if the Commission would permit the foreign sales of the German ships. Some months later the Commission noti-

fied the plaintiff that it had approved the proposed sales of three of the German ships on condition that the plaintiff pay $450,000 to the Commission, pay to the Commission such further amount by which the cost of conversion of the converted German ship might, upon investigation, turn out to be less than $300,000, and purchase three Liberty ships from the Commission.

During the period of delay, the condition of the ships had deteriorated and the market price had fallen. The foreign purchasers insisted upon large reductions in the formerly agreed prices of the ships. The plaintiff requested the Commission to reconsider the amount of money demanded from it, but, its request being refused, it agreed to the conditions set by the Commission, paid the money and sold the ships. The fourth German ship was later sold, with the Commission's permission, to an Israeli purchaser, the Commission requiring the plaintiff to pay $50,000 to the Commission and to buy another ship from the Commission.

For the three Liberty ships which the plaintiff agreed to buy at the time it sold the first three German ships to foreign purchasers, the Commission and the plaintiff later agreed to the substitution of two Victory ships. There is no issue in this case as to those ships, nor as to the ship which the plaintiff bought from the Commission at the time of the sale to the Israeli purchaser.

As to the condition inserted in the Commission's permission to sell the first three German ships to foreign purchasers, that if, upon audit of the plaintiff's cost of conversion of the first German ship, it should be found that the cost was less than $300,000, the plaintiff should pay the Commission the difference, the Commission required the plaintiff to pay $16,308.82. The amounts of the cash payments to the Commission in connection with the transfers were, then, $450,000, $16,308.82, and $50,000, a total of $516,308.82.

The plaintiff says that this case is, in all essential respects, like the case of

Clapp v. United States, 117 F.Supp. 576, 127 Ct.Cl. 505, certiorari denied 348 U.S. 834, 75 S.Ct. 55, 99 L.Ed. 658, and the case of Suwannee Steamship Co. v. United States, Ct.Cl., 279 F.2d 874, decided June 8, 1960. In those cases this court held that the Maritime Commission's power to grant, or to deny, permission to an owner of a ship to sell it to a foreign purchaser, was intended to be exercised with due consideration of this country's defense position, its foreign policy and its economic welfare; that if the granting of permission would have been detrimental to any of these interests, it would have been highly improper to have granted the permission, with or without a money consideration; that if the granting of permission would not have been detrimental to those interests, the exaction of a money payment for the permission had no relevancy to the transaction.

We have given consideration to the Government's contention that the money in question was not required to be paid for the permission to sell the ships, but was for a number of other considerations, or possible considerations. The difficulty with the Government's argument is that the Commission said in so many words that the permission was granted on condition that the money payment be made. The case is in all essential respects on all fours with the Clapp and Suwannee cases referred to above.

The Government urges that the title of the plaintiff to the ships in question was defective because Mr. Kulukundis, a citizen of Greece and a minority stockholder in the plaintiff corporation, advanced money to the plaintiff for the purchase of the ships. The Maritime Commission and is successor, the Maritime Administration, were at all times aware of all the material facts in this regard. There was nothing remotely approximating fraud, misrepresentation, concealment or other misconduct on the part of the plaintiff. The Maritime Administration was, as shown in finding 66, advised by Mr. Goertner, its special legal assistant who

later became its General Counsel, that the applicable statute did not disqualify citizen corporations from purchasing ships with funds loaned by non-citizen individuals. The plaintiff had a valid title to the ships.

The plaintiff's third claim, for $56,000 on account of the Commission's delay in acting upon one of the plaintiff's applications for permission to sell a ship, is not well founded, and is denied.

As appears from the findings, the defendant's counterclaims have not been proved, and they will be dismissed.

The plaintiff is entitled to recover $516,308.82, and judgment will be entered in that amount.

It is so ordered.

DURFEE, LARAMORE, and WHITAKER, Judges, concur.

JONES, Chief Judge (concurring).

I concur in the result.

As a condition to the purchase of the vessels in dispute in this case, the Maritime Commission required of prospective bidders that, after purchase, the ships would be operated under the American flag. In full knowledge of that requirement, the plaintiff purchased four German merchant ships from the Maritime Commission. The price of conforming to American standards was higher than originally anticipated by the plaintiff. As is related in the majority opinion, when the cost of conversion of one of the vessels was added to the sales price, the plaintiff discovered that he had invested $500,000 in a 4,200-ton ship while the Commission was selling 10,400-ton American-built Liberty ships for $544,-000.

Even after the high cost of conversion had been borne by the plaintiff, it proved impossible financially to operate the converted vessel. The plaintiff, as a result, desired to sell the vessels to foreign purchasers. Ultimately, the Commission consented. However, it tied a price to its consent. It charged plaintiff $516,308.82 for permitting it to sell to foreign purchasers.

There is no doubt that plaintiff had made a bad bargain with regard to purchase of these vessels. That fact alone of course gives it no claims on the public treasury. However, in these circumstances, considering the full measure of the plaintiff's loss, it was unreasonable of the Maritime Commission to exact large amounts from plaintiff before permitting it to escape one of the more onerous provisions of its sales contract, i. e., the requirement that the vessels were to be operated under the American flag.

However, I wish to take exception to the view expressed in the majority opinion that the exaction of a money payment by Maritime can never have relevance in determining whether permission should be granted to sell to foreign purchasers or to transfer to foreign registry. In Suwannee Steamship Co. v. United States, Ct.Cl., 279 F.2d 874, decided June 8, 1960, the Maritime Commission had requested the payment of $20,000 before it would permit the plaintiff to transfer to foreign registry. The court held that this request was improper. In that case I dissented. In Suwannee the plaintiff had pledged to equip itself in American shipyards. Without even doing so, it complained of its bargain to Maritime and asked permission to fly another flag. Maritime resolved to charge it for going elsewhere. Here, on the other hand, the plaintiff, at great expense, sought to equip at least one of its ships to conform to American standards. After doing so, it was demonstrated that none of the ships could be feasibly repaired and operated under American documentation.

No sound administrative policy is served by the exaction of the sum which was required of the plaintiff in this situation. I think it important, however, to restate my conviction that in some circumstances exaction of a money payment by the Maritime Commission *may* quite properly serve the ends of admin-

istrative policy. The statute, the Shipping Act of 1916, 46 U.S.C.A. § 839, gives very generous discretion to Maritime to condition approval in matters of this kind.

I have no doubt that, if the circumstances warrant, payment of a sum of money may be conditioned to Maritime's approval in a given situation.