NEWMAN, Circuit Judge,
dissenting.
The United States does not dispute that it overcharged the plaintiffs for electric power, and that it is required to repay the overcharge in accordance with the FERC rate schedule and the governing federal statutes. Nonetheless, the United States’ position is that it will not comply with this law, for nobody can sue it to enforce the law. We agree that FERC, a. federal agency, cannot order a refund of the overages charged by the United States, but that does not insulate the United States from suit by the overcharged buyers of electric power from the United States. My colleagues on this panel strain to find a remedy, by announcing that maybe these buyers can recover something from the exchanges that brokered the overcharged transactions—but my colleagues hold that there is no other remedy for the government’s refusal to comply with the statute that the government admits to have violated.
The first assigned judge of the Court of Federal Claims rejected this position, on proceedings that lasted seven years. However, the successor judge of that court discarded the prior adjudication, and held that the court is helpless to act. The Federal Circuit now agrees. I respectfully dissent.

Legal protection of property rights is a cornerstone of our government

No person shall ... be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.
U.S. Const, amend. V.
Government is instituted to protect property .of every sort; as well that which lies in the various rights of individuals, as that which the term particularly expresses. This being the end of government, that alone is a just government, which impartially secures to every man, whatever is his own.
The Complete Madison at 45 (Saul K. Pad-over ed. 1953), letter to James Monroe, Oct. 15,1786 (emphasis in original).
. Our court is reminded of this high obligation by these watchwords of the Nation’s duty to citizens, carved on the wall.of this courthouse, welcoming those who seek justice in suit against the government:
It is as much the duty of government to render prompt justice against itself, in favor of citizens, as it is to administer the same between private individuals.
President Abraham Lincoln, First Annual Message Before the U.S. Senate and House of Representatives (Dec. 3, 1861); engraved in the Lobby of the Howard T. Markey National Courts Building, 717 Madison Place, NW, Washington, DC 20439.
These obligations are formalized in the Tucker Act and other implementing legislation, and are assigned to this court.

The overcharge and the statutory refund obligation are not disputed

The overcharge is not disputed: the plaintiffs paid money to the federal power agencies at prices set by FERC-regulated auction markets, and the federal sellers of power and others made windfall profits. *1364 FERC then required that these profits be refunded, on the basis of just and reasonable market clearing prices. All of the FERC-ordered refunds to the affected purchasers have been paid by the obligated entities, with the exception of the federal agencies the Bonneville Power Administration (BPA) and the Western Area Power Administration (WAPA) (collectively, the Power Administrators).[1]
Both the BPA and the WAPA had agreed, as a condition of participating in the California power market (CalPX and ISO) to accept FERC-regulated tariffs. However, BPA and WAPA have refused to make the designated repayments in accordance with the FÉRC-ordered retroactive market clearing prices, which, as the Ninth Circuit held, reach the entirety of the market, not just a portion of the market transactions.. City of Redding v. FERC, 693 F.3d 828, 842 (9th Cir. 2012). My colleagues hold that the courts cannot require such compliance with law. This cannot be, for compliance with law is the judicial role, and federal compliance is assigned to the Court of Federal Claims and the Federal Circuit.
The Power Administrators acknowledge the overcharges, and do not disagree that the statute requires them to refund the overcharges. The overpayment is not disputed by the government. The panel majority provides details, see Maj. Op. 1348 (“By August 2000, appellants and all other consumers were charged prices three to four times greater than the market rates of less than a year earlier .... FERC ... ordered that refunds be paid by all sellers in the California market.”).
The Ninth Circuit upheld FERC’s authority to find the rates charged by all sellers, including the federal agencies, to be unjust and unreasonable. City of Redding, 693 F.3d at 842 (“[FERC’s] July 2001 Order ‘reset’ the market clearing prices in the CalPX and ISO spot markets during the refund period to just and reasonable levels for the purpose of calculating the amount of refund due [from FERC-regulated entities]. This calculation necessarily involved reevaluating the price previously charged by all market participants because the market clearing price was the same for all of them.”).
It is not disputed that the overage charges are able to be determined, and the refunds properly allocated. The charges, overages, refund allocations, and the like have already been litigated, settled, or otherwise disposed of via FERC’s California Refund Proceeding and related litigation, much of which has received judicial review in the Ninth Circuit. See, in summary, FedeRal Energy Regulatory Commission, The Commission’s Response to the California ELECTRICITY CRISIS AND TlMELINE FOR Distribution of Refunds (available at www.ferc.govAegal/staff-reports/comm-response.pdf); see also, e.g., 102 FERC ¶ 61120 (establishing a mitigated market clearing price (“MMCP”)). “Under the MMCP methodology, refunds were to be determined by the difference between the market clearing price, which was the price charged by all electricity suppliers at a given time, and the MMCP calculated for each hour of the Refund Period, subject to certain adjustments.” PUC v. FERC, 462 F.3d 1027, 1043 (9th Cir. 2006).
Yet the BPA and the WAPA refuse to make the refunds, stating that neither FERC nor the courts have jurisdiction to force them to meet these obligations. BPA/ WAPA Br. at 8 (“FERC has no ... juris *1365 diction over [the agencies].”); Id. at 18 (“The Court of Federal Claims ... does not possess jurisdiction,”); Id. at 58 (“Court of Federal Claims had no jurisdiction.”). However, that is incorrect. Jurisdiction is indeed possessed by the Court of Federal Claims and this court.

The Constitution and the Tucker Act provide remedy, whether on a theory of contract or takiny of property

My colleagues hold that no court or agency possesses authority to enforce payment of the refunds due from the United States to the Appellants. The court refuses to apply the standard that FERC requires and enforces of private' actors in the same position. All power generators and power purchasers affected by the rates that FERC corrected on the California energy markets are bound by this standard. The Tucker Act formalizes the judicial authority whereby this standard is enforced against the federal suppliers of power. The Tucker Act provides jurisdiction to render judgment upon any claim against the United States “founded either On the Constitution, or any Act of Congress or any regulation of an executive - department, or any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.” 28 U.S.C. § 1491(a)(1).
(a) The contract claim
My colleagues hold that since there was an “exchange” acting as broker between the federal power sellers and the state power purchasers, the purchasers can sue only the exchange on the federal overcharges. My colleagues hold that only the broker “middle-man” is in privity with the government. This is not the law of contracts. The exchange was not a principal in these transactions, it had explicitly disclaimed any counterparty status, and the electric power was not the property of the exchange. The exchange simply acted as a broker and passed the sales proceeds to the sellers who provided the power. My colleagues err in holding that the exchanges alone are liable for payment of the overcharges that were charged by the federal sellers of power.
The court is correct that claims against the BPA and WAPA are separate from the FERC statutory jurisdiction. The BPA and the WAPA were not obligated to sell power in areas covered by the CalPX and ISO, but, in choosing to do so, they agreed, as a condition of their participation in that market, to be held to the rules and price-setting mechanisms of the FERC-regulat-ed tariffs. In doing so, the BPA and the WAPA agreed to the Memphis clause, which my colleagues hold has no role in the resolution of this case. Maj. Op. at 1354-55. The majority correctly states that the Memphis clause does not serve as a “source of any contractual obligation between market participants,” id. - but this means only that prices charged under the tariff contract are not “fixed,” but rather are subject to review and change by FERC. These are the prices charged by suppliers like the BPA and the WAPA to the consumers like PG&E, through the CalPX and ISO.
The Memphis clause binds the price charged to FERC determinations; the tariff binds the parties to use the CalPX and ISO for sale/purchase of energy; the parties, conducting sales through the CalPX and ISO to purchase/supply energy amongst themselves, are bound to each other through, their market transactions, the- rules of the tariff, and the FERC regulations. “When a contract provides that its terms are subject to a regulatory body, all parties to that contract are bound by the actions of the regulatory body.” Alliant Energy v. Neb. Pub. Power Dist., 347 F.3d 1046, 1050 (8th Cir. 2003). See *1366 Inter-City Gas Corp. v. Boise Cascade Corp., 845 F.2d 184, 187 (8th Cir. 1988) (holding that parties to a contract which provided that its rates “may be approved, ordered or set by any valid law, order, rule or regulation of any ... regulatory authority ... having jurisdiction,” were bound by a FERC rate determination, even though they were not directly subject to FERC’s jurisdiction). The sellers and buyers of power achieved privity through the sale and purchase of electricity, brokered by the exchange.
FERC has the statutory authority to determine the “just and reasonable” rate on and after the Refund Effective Date, and all parties had previously agreed to be bound by such rates. The Ninth Circuit recognized that FERC could not order the United States to pay these mandated refunds. Bonneville Power Admin. v. FERC, 422 F.3d 908, 926 (9th Cir. 2005). This is where the Tucker Act comes in, for this contractual obligation between the federal power sellers and the state purchasers.
(b) Other Tucker Act Authority
In addition to the contractual relation between the Power Administrators, as sellers, and the Appellants; as buyers, the Tucker Act also provides remedy on a Constitution-based theory of property taking, just compensation, and/or illegal exaction. An illegal exaction arises when “the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum” that “was improperly paid, exacted,- or taken from the claimant in contravention of the Constitution, a statute, or a regulation.” East-port S.S. Corp. v. United States, 372 F.2d 1002, 1007 (Ct. Cl. 1967). This cause arises when “some specific provision of law commands expressly or by implication the payment of money, upon proof of conditions he is said to meet.” City of Manassas Park v. United States, 633 F.2d 181, 183 (Ct. Cl. 1980).
When overcharges were made and required by the government, this may support a takings claim. And when the overcharges were designated by FERC as illegal and repayment was ordered, their exaction became illegal. On either theory, the Fifth Amendment provides for recovery of the overpayment. Even on the theory that there was no contractual relationship between the federal power sellers and the state power buyers, repayment of the overcharge is required, for it is not disputed that “the Government has the citizen’s money in its pocket,” money to which the government concedes it has no right. Clapp v. United States, 117 F.Supp. 576, 580 (Ct. Cl. 1954).
The claimant must demonstrate that the statute or provision causing the exaction provides, either expressly or by “necessary implication,” that “the remedy for its violation entails a return of money unlawfully exacted.” Cyprus Amax Coal Co. v. United States, 205 F.3d 1369, 1373 (Fed. Cir. 2000). The Power Administrators imposed an “unjust and unreasonable” price on the appellants, who “paid money over to the Government, ... and seek[ ] return of all or part of that sum” that “was improperly paid ... in contravention of [statute and regulation].” Eastport S.S. Corp., 372 F.2d at 1007. This standard is met here, and the remedy laid out by statute is refund of the overpayment.
The court has previously addressed similar issues. In Ontario Power Generation, Inc. v. United States this court recognized that “there are some circumstances under which jurisdiction exists even though the plaintiff did not pay money directly to the government.” 369 F.3d 1298, 1302 (Fed. Cir. 2004). In Camellia Apartments, Inc. v. United States, 334 F.2d 667 (Ct. Cl. 1964), *1367 the court held that Tucker Act jurisdiction existed even though the plaintiff had not paid the exacted sums directly to the government. In that case, the Federal Housing Administration required that the plaintiff pay a “prepayment premium charge” to its mortgagees as a precondition to refinance its properties with private lenders. Id. at 669. The mortgagees then transmitted the premium to the Federal Housing Administration. In rejecting the government’s motion to dismiss for lack of jurisdiction, the court said:
The fact that the FHA acted through the mortgagees in requiring the payments of which plaintiffs complain is immaterial; under the pertinent regulation, the mortgagees were required to collect these funds and to remit them to the Commissioner. Therefore, we do not think that defendant can seriously deny plaintiffs’ allegation that the mortgagees acted solely as the FHA’s agents in so doing.
Id. Similarly here, the BPA and the WAPA collected the overcharges through the CalPX and ISO. “Under decisions of the Supreme Court and this court, a com-pensable taking does not occur unless the government’s actions on the intermediate third party have a ‘direct and substantial’ impact on the plaintiff asserting the takings claim.” Casa De Cambio Comdiv S.A. De C.V. v. United States, 291 F.3d 1356, 1361 (Fed. Cir. 2002). It cannot be denied that the retention of the “unjust and unreasonable” rate charges by the government has, and continues to have, a “direct and substantial impact” on the Appellants.
Whether under either a theory of contract or taking, the Court of Federal Claims has jurisdiction of this claim against the government, as it initially held.

Conclusion

It is contrary fundamental law to exclude this claim from access to judicial review and remedy. “The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right.” Marbury v. Madison, 5 U.S. (1 Cranch) 137, 163, 2 L.Ed. 60 (1803). The judicial obligation and authority is to remedy the “unjust and unreasonable” rate charges as determined by FERC and confirmed on Ninth Circuit review. The remedy is assigned to the Court of Federal Claims and to the Federal Circuit.
I respectfully dissent from the court’s rejection of that assignment.