AL JOHNSON CONSTRUCTION CO.,
and Massman Construction Co., A
Joint Venture, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 204–89C.

United States Claims Court.

Feb. 21, 1990.*

John B. Tacke, Alexandria, Va., for plaintiff.

Frank B. Flink, Jr., with whom were Asst. Attys. Gen. Stuart M. Gerson and David M. Cohen, Washington, D.C., for defendant.

## OPINION

BRUGGINK, Judge.

This is a contract action brought pursuant to the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–13 (1982) ("the Act"). Defendant has moved to dismiss the action under RUSCC 12(b)(1) (lack of jurisdiction). It contends that the attempted certification of plaintiff's claim was ineffective. The issue is whether, in the circumstances of this case, certification of the claim by the Project Manager constitutes certification by "a senior company official in charge at the Contractor's plant or location involved." Defense Acquisition Regulation ("DAR") 7–103.12(a), 32 C.F.R. § 7–103.12(a) (1982). After considering the parties' written and oral arguments, the court concludes that the certification was inadequate, and that the action must be dismissed without prejudice.

## BACKGROUND FACTS

Plaintiff is a joint venture consisting of Al Johnson Construction Co. ("Johnson") and Massman Construction Co. (the venture will be referred to as "Johnson Massman"). On September 30, 1982, Johnson Massman and the United States Corps of Engineers ("Corps") entered into a contract. The contract was signed for the joint venture by the President of Massman Construction Co. and by the President of

* This opinion was originally filed February 21, 1990 as an unpublished opinion. Upon unop- posed motion of defendant, it is being reissued as a published opinion.

the Construction Division of Johnson. By the terms of the contract, Johnson Massman was to construct Phase II of the Old River Control Auxiliary Structure ("OR-CAS") on the Mississippi River in Louisiana. The total price was $135,264,995.00. The work required under the contract included the construction of a six-gated dam, channel excavation and construction of inflow and outflow channels to convey water to and from the auxiliary structure.

During construction, the parties apparently had disagreements concerning defendant's contract responsibility to design suitable concrete mixes for use by plaintiff. In its complaint, Johnson Massman alleges that it incurred additional direct and indirect costs due to defendant's poor handling of the design for the mix. On September 2, 1986, Johnson Massman submitted a certified claim in the amount of $1,087,213.62. The claim was signed by Brian Kaub, the "Project Manager." After extensive review, the Contracting Officer ("CO") denied the claim on April 15, 1988. Suit was subsequently brought in this court.

## DISCUSSION

■ The Act requires that, for claims in excess of $50,000.00, the contractor must certify that the claim is made in good faith, and, to the best of the contractor's knowledge, is supported by accurate and complete data. 41 U.S.C. § 605(c)(1). The filing of a properly certified claim with the CO is a jurisdictional prerequisite to asserting a claim under the Act. *Ball, Ball & Brosamer, Inc. v. United States*, 878 F.2d 1426, 1428 (Fed.Cir.1989); *Thoen v. United States*, 765 F.2d 1110, 1116 (Fed.Cir.1985).

The disputes clause of the contract incorporates a regulatory provision found at DAR 7–103.12(a), 32 C.F.R. § 7–103.12(a).[1] In relevant part, the regulation provides:

> The certification shall be executed by the Contractor if an individual. When the Contractor is not an individual, the certification shall be executed by *a senior company official in charge at the Con-*

*tractor's plant or location involved,* or by an officer or general partner of the Contractor having overall responsibility for the conduct of the Contractor's affairs.

32 C.F.R. § 7–103.12(a) (emphasis added). Because Kaub is not an officer in either company, the parties agree that the relevant inquiry is whether he is a "senior company official in charge at the ... location involved."

■ The parties have submitted affidavits and documents in support of their respective positions. Because the motion is brought pursuant to RUSCC 12(b)(1) and raises jurisdictional issues, the filing of materials outside the pleadings does not call for consideration of the motion as one for summary judgment. *See* RUSCC 12(b). While the unchallenged allegations of the complaint are taken as true for purposes of ruling on the motion, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), the court may inquire, by affidavits or otherwise, into facts necessary to support jurisdiction, and may resolve disputed facts. *Western Transp. Co. v. Couzens Warehouse & Distributors, Inc.*, 695 F.2d 1033 (7th Cir.1982) (in determining whether it has subject matter jurisdiction, a court may review any available evidence); *Eaton v. Dorchester Development, Inc.*, 692 F.2d 727 (11th Cir.1982) (court may, in resolving 12(b)(1) motion, make factual determinations); *Williamson v. Tucker*, 632 F.2d 579 (5th Cir.1980) (in resolving jurisdictional question, court may make factual findings); *see Gibbs v. Buck*, 307 U.S. 66, 71–72, 59 S.Ct. 725, 728–29, 83 L.Ed. 1111 (1939) ("[a]s there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court.")

Defendant attaches to its motion a letter dated May 30, 1985, written by D.A. Johnson, President of Johnson's Construction Division, to the Corps' Resident Officer for the ORCAS project, authorizing Kaub to do certain things in connection with the per-

---

1. The current version of that regulation is found at Federal Acquisition Regulation ("FAR") 33.- 207, 48 C.F.R. § 33.207 (1988).

formance of the contract. The authorization is quoted in full below:

As President of the Construction Division of Al Johnson Construction Co., I hereby authorize and appoint Brian C. Kaub as Project Manager of the ORCAS project, to do and perform the following acts and things in connection with the performance of said Contract: to sign and execute (a) progress payment estimates, (b) vouchers, (c) change orders, if the increase or decrease in the Contract does not exceed Fifty Thousand Dollars ($50,000.00), (d) subcontracts, and (e) payroll transcripts and affidavits. Mr. Joseph E. McGowan will remain associated with the Project as Project Sponsor, and will also retain the above authorities.

Attached to the letter was a corporate resolution, dated May 30, 1985, which declared that the president or any vice president was authorized to issue a power of attorney appointing Kaub as "Attorney-in-Fact" for the corporation to perform the functions set out in the letter above. This appointment occurred toward the end of the contract period. Work had commenced on November 5, 1982, and the finished project was accepted on September 5, 1986. Prior to his appointment as Project Manager, Kaub had been Project Engineer.

Defendant also submits the affidavit of Donald Hull, Chief, Construction Division for the New Orleans District Corps. He had responsibility for all construction work performed by the New Orleans District, but recites that he is "intimately familiar" with the details of the ORCAS contract since it was the most sensitive one performed during this period. He visited the jobsite on a number of occasions and kept up a constant dialogue with "key" personnel of the contractor both in the Johnson's home office and in the field office. He attended a number of meetings between Government and Johnson Massman personnel. He states that "[p]articularly for controversial matters, home office executives were actively involved." He likened the Project Manager's authority to that of the

Government's Resident Engineer. Both were authorized to bind their principals up to $50,000.00, and to negotiate on larger matters, with the understanding that agreements on negotiated matters were subject to approval by the CO and the contractor's senior executives. He asserts, and plaintiff does not dispute, that on all modifications in excess of $50,000.00, either the president or vice president of both members of the joint venture were signatories.

Defendant also points to the joint venture agreement, in which Johnson is named "Sponsor" of the joint venture, and is given authority to:

"appoint and replace from time to time a Project Manager and such other agents and employees as it may deem necessary to carry out the construction contract.... Each Joint Venturer shall, if requested to do so by the sponsor, execute and deliver a Power of Attorney or other written document evidencing the authority of the Sponsor or the Project Manager to carry out the powers conferred upon them."

Johnson Massman, in its response, relies primarily on the affidavit and "deposition"[2] of D.A. Johnson. The affidavit was executed on August 10, 1989, and the deposition was taken on September 7, 1989. The relevant portions of the deposition are set forth below:

Q. Was there anyone either in Al Johnson's office in Minneapolis or in Massman's office in St. Louis who had a review authority over job site decisions of Mr. Kaub or he had full authority?

A. He had full authority on the project site.

. . . .

Q. Did you consider it necessary for you to approve his certification of the claim?

A. No.

Q. Why not?

A. He had the authority....

---

2. The deposition was not taken with opposing counsel present. It is more in the nature of an affidavit in question and answer format.

Q. I am going to ask you this question Mr. Johnson, because of an argument made by the Government on its motion here.... [I]n making Mr. Kaub project manager and with authority to certify claims, as you have testified, was it your intent that the joint venture might escape liability on the basis of improper certification because Mr. Kaub was a signatory?

A. No....

Q. Did you intend, as sponsor of the project, to be bound by Mr. Kaub's certification?

A. Yes.

....

Q. Was Mr. Kaub's authority to certify a [claim] questioned within Al Johnson Construction Company?

A. No.

....

Q. And one final question, did Mr. Kaub have the overall responsibility for the conduct of the joint venture's responsibilities on the ORCAS project?

A. Yes, he was the senior official on the project for the joint venture and responsible for the contract there.

Mr. Johnson's affidavit is of similar import. The key recitation is that Kaub was "in fact the senior company official in charge of the contract site. He was responsible for the submission of and negotiation of all changes or claims on the jobsite. His authority to prepare, certify and negotiate claims was without limitation."

■ For two reasons the court is reluctant to place much weight on these after-the-fact descriptions of Kaub's duties. First, they are not consistent with the specific and considerably more limited written authorization under which Kaub operated as Project Manager. That appointing document makes no mention of Kaub's authority to certify claims. Nor is there any language which could be construed to have given the broad authority referred to in the affidavit and deposition. In fact, the authorization letter is inconsistent with an argument that Kaub had unique power to act, since that letter reserves identical powers to Mr. Joseph McGowan, the Project Sponsor. Given the letter's specificity in other respects, particularly the limitation on authority to deal with change orders in excess of $50,000.00, and in view of the complete lack of any generalized language of authority, the assertion at this stage that Kaub's authority on the site was "without limitation" is unpersuasive. If plaintiff's position is correct—namely, that Kaub's authority was much broader than that outlined to the Corps—it becomes difficult to understand the utility of the May 30, 1985 letter. The court has to presume that it was intended as a description of all the powers with which Kaub was vested that were relevant to his dealings with the Corps. It is not clear, therefore, that Kaub had authority to certify the claim.

■ The second reason the court places little reliance on plaintiff's submissions is that D.A. Johnson's representations focus on Kaub's authority to act. They do not address, at least directly, the separate issue of whether he was "a senior company official in charge at the ... location involved." With respect to the creation of an agency relationship, presumably the corporation could agree to be bound by the actions of any person it wished to designate to act on its behalf. Having the authority to act on behalf of the corporation is certainly a requisite, and, as discussed above, it is not clear that it was present here. Merely having authority to certify, however, does not necessarily mean that the person authorized to act by the company is legally permitted to certify claims. The court is compelled by the recent decision of the Federal Circuit in *Ball, Ball & Brosamer*, 878 F.2d 1426, to consider this distinction.

In *Ball*, the court was presented with a certification by Mr. Meeks, "Chief Cost Engineer" for plaintiff. Mr. Meeks and the company president both submitted affidavits to the effect that, within the company, Meeks had authority to certify claims. It was also apparent that he was not physically located at the site of contract performance. The court rejected plaintiff's analysis, concluding that the controlling inquiry was not whether the company treated

Meeks as authorized to certify the claim, but whether Meeks fell into one of the two categories of persons which the regulation permits to certify claims. He was not an officer of the company, and even assuming he was a senior official within the company, he was not "in charge at the ... location involved." 878 F.2d at 1428.

In light of *Ball*, the present inquiry must be focused on the position of Kaub within the joint venture or its constituent companies. Was he "a senior company official?" In reaching its conclusion in *Ball*, the Federal Circuit wrote that it would "apply the regulation as written." *Id.* at 1429. In respect to the present case, the court notes therefore that the regulation's use of the article "a" rather than "the", as well as its use of the term "senior" must be taken into account. If the regulation allowed for certification by *"the* senior company official" at the location involved, then it would be obvious that the project manager or someone of equivalent function could certify claims. The implication of that terminology would be that whoever is the most senior company person on site may certify the claim. The regulation uses the word "a", however, shifting the focus away from the locality and to the parent organization. The reasonable inference to be drawn is that the person must be a senior official within the company, not just the most senior person on site. The regulation contemplates the possibility that there may not be a senior company official who is in charge at the site. It is certainly easy to visualize circumstances in which contract performance occurs at a local level and is executed by low level company employees.

The second salient element of the regulation is that the certifying person must be a *"senior* official." As plaintiff points out, this term clearly cannot be synonymous with "officer"; otherwise the alternatives in the regulation would be duplicative.

The parties have brought to the court's attention a number of cases which have directly or indirectly addressed the question of whether a project manager was a senior company official. Johnson Massman places greatest reliance on two Board of Contract Appeals decisions. In the earliest of these, *Dawson Construction Co.,* VABCA No. 1967, 84–2 BCA (CCH) ¶ 17,383, the claim was signed by "Jim Dawson, Project Manager." In holding that Dawson's signature was adequate, the board relied on an affidavit, apparently from the company's president, to the effect that Dawson would supervise the overall progress of the work, and assist in solving all disputes that might arise at the jobsite. That affidavit was executed in connection with a different contract, however, and after the claim at issue had been filed. The court does not find *Dawson* persuasive here. As defendant points out, it is questionable whether *Dawson* is fully consistent with *Ball*, insofar as it relies on company authorization rather than on Dawson's status. In any event, the most that can be drawn from *Dawson* is the proposition that a project manager can be a senior official for purposes of certifying a claim, if vested with sufficient powers. To the same effect is *Santa Fe, Inc.,* VABCA No. 1746, 85–2 BCA (CCH) ¶ 18,069.

*Christie–Willamette,* NASA BCA No. 1182–16, 85–1 BCA (CCH) ¶ 17,930, also involved a joint venture. The agreement creating the venture provided that the "Managing Partner [equivalent to Sponsor in the case at bar] shall select the Project Manager who shall supervise performance of the Contract as herein provided and who shall serve as a member of the Management Committee...." Elsewhere the agreement defined the role of the Project Manager: "[T]o supervise, manage and direct the work required by the Contract and ... receive and execute on the part of the Joint Venturers such notices, directions and instructions as the Owner or the Management Committee may give from time to time." In holding that a certification by the project manager was valid, the board found persuasive the facts that the project manager had been given "full authority" to act with respect to execution of the contract, and that his actions with respect to the claim were made with the full knowledge and approval of the senior executives of the venture partners. *Id.* at 89,780. As with the *Dawson* decision, the board fo-

cused, perhaps improperly in light of *Ball*, on the authority granted by the joint venture, rather than on whether the project manager was a senior company official. The court views the latter inquiry as focused more on position and function within an organization. Nevertheless, the facts of that case are distinguishable in that regard from the present case. The project manager in *Christie–Willamette* bore clear indicia of a being a part of senior management of the venture. He was part of the Management Committee of the venture, and was the individual within the venture responsible to "supervise, manage and direct" work on the contract.

Defendant argues that the decision of this court in *Donald M. Drake Co. v. United States*, 12 Cl.Ct. 518 (1987), is directly on point. In some respects the facts there are similar to those here. The claim in that case was certified by the project manager, who was specifically authorized to certify claims. Unlike the present case, however, that authority was apparently formally expressed before the claim was made. The disputes clause in that contract was similar to the one at bar. The court held that certification by the project manager was insufficient. He was not a company officer, and plaintiff was unable to demonstrate that he was a senior company official. The evidence was that the project manager was responsible for overall project scheduling, and for coordinating and monitoring performance, but that others were responsible for overseeing and reviewing all company operations. *Id.* at 520. Although not necessary to the result there, the court pointed out that the company executive vice president was responsible for assembling and drafting the claim. *Id.* The court looked to where the ultimate responsibility to act on behalf of the company lay.

Decisions not involving project managers also shed some light on the characteristics of a "senior company official." In *Todd Building Co. v. United States*, 13 Cl.Ct.

587 (1987), the signature of the general manager was accepted since he "had general supervisory authority over Todd's affairs and had full authority to represent and bind Todd." *Id.* at 588. In *Southwest Marine, Inc.*, ASBCA No. 35518, 88–3 BCA (CCH) ¶ 20,982, certification by the manager of contracts was appropriate. His responsibilities included general management, assisting in cash flow, running the contract department, and negotiating change orders. His contractual authority was unlimited and his immediate supervisor was the company president.[3]

It is not entirely clear from the parties' arguments whether they contend that the nature of any project manager's role automatically answers the question presented here. In its brief of September 21, 1989, Johnson Massman distinguishes *Drake* in the following way: "Mr. Douglas Johnson has made it very clear in his deposition that Mr. Kaub 'had full authority' at the ORCAS site. This was made known to Defendant in the May 30, 1985 designation of Kaub as Project Manager." Plaintiff's Response to Defendant's Motion To Dismiss at 3. The May 30 letter did not do that, however, unless such authority is implicit in Kaub's designation as Project Manager. The court declines to so find. The court concludes from the regulation and the decisions construing it that Kaub's status as project manager is not, *per se*, sufficient to make him a senior company official. Johnson Massman has the burden of showing from the particular facts and circumstances that Kaub met the regulatory requirement. The mere fact that he was the project manager is not sufficient.

Although the appropriate resolution in this case is less than obvious, what is clear, and what guides the court in face of the ambiguity, are two considerations. First, in light of the evidence and argument put forward by defendant, Johnson Massman cannot rest on the allegations of its complaint; it must affirmatively prove the existence of jurisdiction. *KVOS, Inc. v. As-*

---

3. The issue of whether Mr. McKay, who certified the claim, was a senior company official on site was not addressed in *Southwest Marine*. The court notes, however, that McKay apparently was not an officer, that the work took place in San Diego, and that the claim was mailed from San Diego.

*sociated Press*, 299 U.S. 269, 280, 57 S.Ct. 197, 201, 81 L.Ed. 183 (1936). Second, it is well established that the certification requirement fulfills an important Congressional objective of discouraging unwarranted claims and encouraging settlement, *Folk Construction Co. v. United States*, 226 Ct.Cl. 602, 604 (1981), by "trigger[ing] a contractor's potential liability for a fraudulent claim under section 604 of the Act." *Skelly & Loy v. United States*, 231 Ct.Cl. 370, 376 n. 11, 685 F.2d 414, 418 n. 11 (1982) (quoted in *Ball, Ball & Brosamer*, 878 F.2d at 1429). The court cites these cases, not because of any concern about plaintiff's claim, but merely to emphasize that the certification requirement has been strictly applied.

In the final analysis, the court is forced to find that Kaub was not authorized, at the time of the claim, to make the certification. Instead, the court is presented with a formal authorization which cuts off Kaub's authority to deal with change orders in excess of $50,000.00. That figure has particular significance in view of the requirement that claims in excess of that amount be certified. *See* 41 U.S.C. § 605(c)(1). Moreover, the circumstantial evidence suggests that the limits of the formal authorization were, in fact, observed. The plaintiff has not countered defendant's evidence that Kaub's authority was limited to the terms of the May 30, 1985 letter. Defendant's assertions that Kaub performed in a role analogous to the Corps Resident Engineer were not directly challenged, nor did Johnson Massman challenge the assertion that on major disputes, senior management from the home office were involved. These factors suggest not only that Kaub's authority was in fact limited with respect to resolving larger disputes, but that he was not a "senior company official" within the contemplation of the regulation.

## CONCLUSION

Defendant's motion to dismiss is granted. The Clerk is directed to dismiss the case, without prejudice. No costs.