**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF ROCHESTER, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 95–517 C.**

United States Court of Federal Claims.

Feb. 9, 2004.

David T. Case, Washington, D.C., attorney of record for plaintiff, with whom were Joseph J. Brigati and Joseph P. Vitale.

Jerome A. Madden, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., with whom were Daniel McClain and David Hoffman, of counsel; William F. Ryan, Assistant Director; Jeanne E. Davidson, Deputy Director; David M. Cohen, Director, Commercial Litigation Branch; and Stuart E. Schiffer, Deputy Assistant Attorney General, for defendant.

### ORDER

MEROW, Senior Judge.

In a 1986 Financing Agreement, the government acquired the right to purchase stock in First Federal Savings and Loan Association of Rochester ("First Federal"). After the government breached the Agreement, it demanded and received $3 million from First Federal for the release of that right. Questions of breach of contract aside, the court concludes that First Federal does not have a claim for illegal exaction and grants the government's Motion to Dismiss on that ground.

*Background*

In this *Winstar*-related case, First Federal and the Federal Savings and Loan Insurance Corporation ("FSLIC") entered into a Financing Agreement in 1986[1] which included regulatory capital requirements lower than those required of other thrifts, and granted FSLIC the right to acquire stock upon First Federal's conversion from mutual to stock form. Under the Agreement, First Federal was required to issue warrants to FSLIC to purchase up to 25% of the issued stock at 125% of the conversion price. Compl. ¶ 21. First Federal's allegations of breach of the Financing Agreement are discussed in detail in the court's October 13, 2003 Opinion, *First Federal Sav. & Loan Ass'n of Rochester v. United States,* 58 Fed. Cl. 139 (2003), and familiarity with the underlying facts is presumed. First Federal's Complaint alleges that, despite the promises contained in the Financing Agreement, the government subsequently (a) required more onerous capital requirements than those in the Financing Agreement; (b) directed that approximately $120 million in GAAP goodwill be disregarded in calculating First Federal's capital requirements; (c) refused to allow First Federal to calculate its capital compliance in accordance with GAAP; and (d) demanded in 1990 that First Federal submit a capital plan effectively requiring immediate conversion to stock form at an economically inopportune time despite the fact that the Financing Agreement gave First Federal until 1996 to convert. Compl. ¶ 7. In sum, the passage of FIRREA and its implementing regulations breached the 1986 Financing Agreement. Subsequently, in conditions imposed by the Office of Thrift Supervision ("OTS") in its May 22, 1990 approval of First Federal's capital restoration plan, which included conversion from mutual to stock form, First Federal was required to obtain the release of the stock warrants from FSLIC's successor, the Federal Deposit Insurance Corporation ("FDIC"). Compl. ¶¶ 7, 33. First Federal paid FDIC $3 million for the release of those rights. Compl. ¶¶ 7, 36.

Count VI of plaintiff's Complaint filed on August 7, 1995 (entitled "Damages for Deprivation of Property Without Due Process") alleges in its entirety:

65. The goodwill, the contract rights in the Agreement that First Federal had prior to the enactment of FIRREA and subsequent action by the OTS, and the amount paid by First Federal to the FDIC for release of the FDIC's right to warrants, constitute valuable property based upon, among other things, reasonable investment-backed expectations of First Federal.

66. The United States, in FIRREA, in the OTS regulatory capital regulations, and in other ways, has effected a repudiation and abrogation of First Federal's contract rights and a taking of property from First Federal in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution, and First Federal is entitled to recover all damages incurred as a result of this conduct.

Compl. ¶¶ 65, 66.

The government's Supplemental Motion for Summary Judgment and to Dismiss Counts I, II, III, IV, V, VI, and VII of plaintiff's Complaint, filed October 10, 2000, asserts *inter alia* pursuant to RCFC 12(b), that the court lacks jurisdiction to entertain plaintiff's due process claims in Counts VI and VII. Mot. at 63. The Motion also asserts that First Federal does not have a valid takings claim—Count V. The court's Oct. 14, 2003 Opinion lifted the previous stay on the response to the Motion's takings and due

1. A copy of the Financing Agreement is attached as an Exhibit to the Complaint.

process arguments,[2] and ordered First Federal to file a response on or before November 14, 2003, with the government's reply due December 1, 2003. *First Federal,* 58 Fed.Cl. at 166. In its Partial Opposition, First Federal consented to the dismissal of its takings and due process claims, Counts V and VII, but opposed dismissal of the portion of its Count VI claim for deprivation of property without due process, specifically, its payment of $3 million to the government to purchase the latter's stock warrant rights. First Federal's Partial Opposition also included a Cross-motion for Summary Judgment on Count VI, which prompted the government's Motion to Strike on November 19, 2003 that argued only plaintiff's Response, not its Cross-motion, was authorized by this court's order. The government's Opposition to the Summary Judgment Motion and Cross-motion was filed December 15, 2003. First Federal's Reply to the government's Opposition and Response to the Cross-motion were filed January 15, 2004. The government filed its Reply on February 2, 2004. Because the court grants the government's Motion to Dismiss Count VI, the government's Motion to Strike and the parties' respective Motions for Summary Judgment on Count VI are denied as **moot.**

Count VI alleges three categories of plaintiff's property were taken: goodwill, contract rights, and the $3 million paid by to FDIC for its release of its stock rights. First Federal asserts the $3 million First Federal was required to pay to the government for release of the warrant rights was an illegal exaction, a claim cognizable in this court.[3] The government's position is that Count VI alleges a contractual breach, not a statutory or regulatory violation necessary for an illegal exaction claim and jurisdiction in this court.

*Standard of Review*

First Federal has the burden of establishing subject matter jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp. of Indiana,*

298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Rocovich v. United States,* 933 F.2d 991, 993 (Fed.Cir.1991). Under RCFC 12(b)(1), claims should be dismissed for lack of subject matter jurisdiction when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Perez v. United States,* 156 F.3d 1366, 1370 (Fed.Cir.1998). In considering a motion to dismiss, the court construes all allegations in the light most favorable to the non-moving party. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds, Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Conti v. United States,* 291 F.3d 1334, 1338 (Fed. Cir.2002), *cert. denied,* 537 U.S. 1112, 123 S.Ct. 904, 154 L.Ed.2d 785 (2003). The Complaint's factual allegations are presumed to be true. *See Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988). "Fact-finding is proper when considering a motion to dismiss where the jurisdictional facts in the complaint are challenged." *Moyer v. United States,* 190 F.3d 1314, 1318 (Fed.Cir.1999). *See also Lynn v. United States,* 58 Fed.Cl. 797, 800 (2003). "If a motion to dismiss for lack of subject matter jurisdiction ... challenges the truth of the jurisdictional facts alleged in the complaint, the ... court may consider relevant evidence in order to resolve the factual dispute." *Reynolds,* 846 F.2d at 747. "Because the motion is brought pursuant to the predecessor rule to RCFC 12(b)(1) and raises jurisdictional issues, the filing of materials outside the pleadings does not call for consideration of the motion as one for summary judgment." *Lynn,* 58 Fed.Cl. at 800, quoting *Al Johnson Constr. Co. v. United States,* 19 Cl.Ct. 732, 733 (1990). The court may review the record and resolve disputed facts. " 'While the unchallenged allegations of the complaint are taken as true for purposes of ruling on the

---

**2.** First Federal's obligation to respond to the government's constitutional arguments was stayed by a November 2, 2000 Order.

**3.** The court notes that First Federal's Partial Opposition does not defend or address either

goodwill or other contract rights alleged in Count VI, and requests the court deny the government's motion to dismiss only as to that portion of Count VI that relates to the $3 million release payment.

motion, the court may inquire, by affidavits or otherwise, into facts necessary to support jurisdiction, and may resolve disputed facts.' (citation omitted)." *Id.*

*First Federal's Illegal Exaction Claim*

 Generally, the Court of Federal Claims lacks jurisdiction over due process claims because that constitutional provision, unlike the takings clause of the Fifth Amendment, is not money-mandating. *See, e.g., Murray v. United States,* 817 F.2d 1580, 1582–83 (Fed.Cir.1987); *Medina Constr., Ltd. v. United States,* 43 Fed.Cl. 537, 558 (1999). *See also Crocker v. United States,* 125 F.3d 1475, 1476 (Fed.Cir.1997)("The Court of Federal Claims correctly concluded that it does not have jurisdiction to hear Crocker's due process or seizure claims under the Fifth Amendment to the United States Constitution"); *AG Seven P'ship v. United States,* 57 Fed.Cl. 521, 534–35 (2003) (finding no jurisdiction over due process claims); *Nat'l Australia Bank v. United States* 55 Fed.Cl. 782, 789 (2003)(dismissing due process claims for lack of jurisdiction). However, as the court noted in its October 14, 2003 Opinion, this court has jurisdiction over claims of illegal exaction, a subset of due process claims. "[T]here is no jurisdiction under the Tucker Act over a Due Process claim unless it constitutes an illegal exaction." *First Federal Sav. & Loan Ass'n of Rochester v. United States,* 58 Fed.Cl. 139, 167 (2003), quoting *Casa de Cambio Comdiv v. United States,* 291 F.3d 1356, 1363 (Fed. Cir.2002), *cert. denied,* 538 U.S. 921, 123 S.Ct. 1570, 155 L.Ed.2d 311 (2003). *See also Bowman v. United States,* 35 Fed.Cl. 397, 400–01 (1996). As the Federal Circuit explained in *Aerolineas Argentinas v. United States,* 77 F.3d 1564, 1578 (Fed.Cir.1996), "[w]e conclude that the Tucker Act provides jurisdiction to recover the sums exacted illegally ... due to [a] **misinterpretation or misapplication of statutes, regulations, or forms.**" (emphasis supplied). Here, in order to supply the requisite " 'jurisdictional hook,' " First Federal's payment of $3 million to the government for the release of stock warrants must be alleged to have been " **'exacted as a direct result of the application of a statute or a regulation.' "** *Norman v. United States,* 56 Fed.Cl. 255, 266 (2003) (citations omitted)(emphasis added).

 First Federal does not claim that it was compelled to pay the government money that under regulation or statute it was not required to pay. First Federal's theory is that the government's executory right to stock warrants became unenforceable because of the government's prior breach; therefore, the payment of the $3 million (the "exaction") was not one based on contract, a designation fatal to an illegal exaction claim. That misses the point. Regardless of the validity of the Financing Agreement, regardless of whether FIRREA and its implementing regulations breached that Agreement thereby forgiving First Federal's future obligations thereunder, regardless of the severability of the warrant provisions from the remainder of the Financing Agreement, and regardless of whether or not FDIC had a right to receive the warrants, FDIC's "exaction" of $3 million dollars from First Federal for a release of those warrants, was based on its contract rights not on any statute or regulation. None of these approaches supply the requisite jurisdictional foundation of payment based on or procured by the Constitution, a statute or a regulation. Despite First Federal's efforts to gloss over the contractual nature of its Count VI illegal exaction claim, it is *ex contractu.* While this sum may reappear as contract damages at trial, this court has no jurisdiction to consider it as an illegal exaction.

In its Reply to the government's Motion for Summary Judgment, First Federal again attempts to couch its claim in non-contractual terms (while preserving its right to argue that $3 million is or will be part of its claim for breach of contract in the upcoming damage trial).[4] First Federal argues that the government had no legal basis to demand $3 million; therefore its "exaction" of these funds from First Federal was a use (or mis-

---

4. Regardless of whether or not a cross-motion for summary judgment is considered a response to a motion to dismiss and/or was authorized under the various pre-trial orders in this case, the motions are moot. However, the court has considered the arguments of the parties concerning the viability of First Federal's illegal exaction claim contained in those motions and responses.

use) of some statutory or regulatory authority. Plaintiff's logic is flawed. First of all, the government's demands for payment were based on the 1986 Financing Agreement—a contract. Simply arguing a prior breach by the government destroyed that contractual right, does not deny the underlying contractual nature of the claim, or more importantly, transform the claim into one of a statutory violation. Simply arguing the government had regulatory or statutory clout such that First Federal paid $3 million dollars is likewise insufficient. Plaintiff still claims the payment of funds was improper because the government previously breached the contract. Breach does not detract from or destroy the contractual rights inherent in plaintiff's claim. Rather, to comprise an illegal exaction claim, the payment must have been a direct result of a demand under statute or regulation. The $3 million here was not claimed to have been "exacted as a direct result of the application of a statute or a regulation." *Casa de Cambio Comdiv v. United States,* 48 Fed.Cl. 137, 145 (2000). This causal nexus is clearly required. In *Aerolineas Argentinas,* the illegal exaction arose from the government's application of a regulation that directly contravened a statute, and as quoted above, the Federal Circuit limited cognizable exactions to those due to "misinterpretation or misapplication of statutes, regulations, or forms." 77 F.3d at 1578. *See also Crocker v. United States,* 37 Fed.Cl. 191, 197 (1997)(explaining that one type of noncontract-based money claim envisioned by the Tucker Act is where "the Government, under color of statute, demands and receives money from the claimant," and the parties disagree whether the statute requires such payment); *South Puerto Rico Sugar Co. Trading Corp. v. United States,* 167 Ct. Cl. 236, 244, 334 F.2d 622, 626 (1964)(validity of sugar quota fees levied under regulation); *Eversharp, Inc. v. United States,* 129 Ct.Cl. 772, 125 F.Supp. 244, 246–47 (1954)(enforcement of regulation contrary to statute); *Pan Am. World Airways v. United States,* 129 Ct.Cl. 53, 122 F.Supp. 682, 683–84 (1954) (payment to government under invalid regulation).

Recently, in *Norman v. United States,* 56 Fed.Cl. 255 (2003), the court rejected a claim that property delineated as wetlands was illegally exacted. Plaintiffs had argued the delineation was in violation of Public Law No. 102–104 which forbade expenditure of funds by the Army Corps of Engineers to delineate wetlands under the 1989 manual under which plaintiffs' 1991 wetlands designation had been made. The court disagreed, finding the statutory violation of expenditure of funds for a wetlands delineation under the 1989 manual did not directly cause the delineation—the asserted exaction.

... plaintiffs' property was not exacted illegally *due to* a misapplication of this statute. Although it is true that Public Law No. 102–104 *may have been* violated through the expenditure of these funds, it is not through that specific misapplication of this statute that property was "exacted" from plaintiffs. The end result with respect to Public Law No. 102–104 is that at least some appropriated funds may have been used in the Corps' completion of the 1991 delineation. The use of these funds, however, did not directly result in what plaintiffs contend is the exaction in this case. Public Law No. 102–104 was, in the context of plaintiffs' illegal exaction claim, an enabling device which the Corps allegedly used to fund the completion of the redelineation of the Ranch under the 1989 manual. However, misapplication of Public Law No. 102–104 did not directly result in an exaction and the delineation of plaintiffs' property was not, in the language of *Eastport [S. S. Corp. v. United States],* [178 Ct.Cl. 599,] 372 F.2d [1002] at 1008 [(1967)] "based upon" Public Law No. 102–104 so as to satisfy the jurisdictional requisite for maintaining an illegal exaction claim in the court.

56 Fed.Cl. at 266, emphasis in original.

First Federal's alleged connection to an unspecified statutory or regulatory provision is even more remote. The government's demand for remuneration for its stock rights was not "based upon" any statute or regulation, nor was the action taken under the guise of such. The demand was pursuant to the government's contractual right to stock warrants. Plaintiff relies on language in *Ambase Corp. v. United States,* 58 Fed.Cl. 32 (2003) for its argument that an illegal exac-

tion claim can rest on allegations that government's demand for payment was *"ultra vires,"* or " 'without legal justification.' " 58 Fed.Cl. at 53, citing *Clapp v. United States,* 127 Ct.Cl. 505, 117 F.Supp. 576, 581 (1954).[5] *Ambase* did not hold such an allegation alone was sufficient for an illegal exaction claim. *Ambase* assumed, for analysis purposes, that the government's demand for infusion of funds into the thrift under a regulatory capital maintenance agreement was based or founded on a statute. Regardless, the *Ambase* court found FIRREA did not breach the unconditional promises in the capital maintenance agreement or any other agreement, therefore the thrift did not have an illegal exaction claim.

First Federal's illegal exaction claim fails "because the duty on which the claim is based is contractual, not statutory." *Yankee Atomic Elec. Co. v. United States,* 42 Fed.Cl. 223, 237 (1998), *aff'd on other grounds sub nom. Maine Yankee Atomic Power Co. v. United States,* 225 F.3d 1336 (Fed.Cir.2000). While First Federal "may have a cause of action for breach of contract, . . . its claim of illegal exaction is unavailing." *Consumers Energy Co. v. United States,* 57 Fed.Cl. 278, 282 (2003).

Accordingly, the government's Motion to Dismiss Counts V, VI, and VII contained in Defendant's Supplemental Motion for Summary Judgment and to Dismiss Counts I, II, III, IV, V, VI, and VII of Plaintiff's Complaint, filed October 10, 2000, is **GRANTED.** First Federal's Cross-motion for Summary Judgment Regarding Count VI, filed November 19, 2003, and the government's Cross-motion to Plaintiff's Motion for Summary Judgment on the Illegal Exaction Claim, filed December 15, 2003, are **DENIED as moot.** The government's Motion to Strike Plaintiff's "Cross-motion" for Summary Judgment regarding Count VI, filed November 19, 2003, is **DENIED.**

---

5. In *Clapp,* government action was challenged as being unauthorized (without legal justification) under the pertinent statute. The court noted that the "best estimate of the present law is that a claim to recover an illegal exaction made by officials of the Government, which exaction is based upon a power supposedly conferred by a statute, is a claim 'founded upon any Act of Congress.' " 117 F.Supp. at 580.