**ORIENT OVERSEAS CONTAINER LINE (UK) LTD., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 98–761 C.

United States Court of Federal Claims.

Dec. 5, 2000.

Brien E. Kehoe, Washington, DC, for plaintiff.

Allison A. Page, with whom were David W. Ogden, Assistant Attorney General, David M. Cohen, Director, Todd M. Hughes, Assistant Director, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

HEWITT, Judge.

This is a suit by a common carrier for reimbursement of costs associated with the detention of illegal stowaways. Plaintiff, Orient Overseas Container Line (UK) Ltd., con-

tends that it is entitled to reimbursement of its expenses incurred in connection with the stowaways, including attorneys' fees expended in connection with an arbitration hearing between plaintiff and Sea–Land Service Inc. (Sea–Land), its shipper, and interest on the sum paid by plaintiff to Sea–Land. The United States, acting through the Immigration and Naturalization Service (defendant or the INS), concedes liability as to certain costs, including the costs of detention, but argues that it is not liable for deportation costs, attorneys' fees or prejudgment interest. The action is before the court on defendant's motion for partial summary judgment, addressing solely attorneys' fees and prejudgment interest, and plaintiff's cross-motion for summary judgment on all issues. For the following reasons, Defendant's Motion is GRANTED with respect to attorneys' fees and interest, and Plaintiff's Motion is GRANTED with respect to all other costs demanded in the complaint.

## I. Background

Plaintiff entered into an agreement with Sea–Land, effective February 1, 1993. Amended Joint Statement of Stipulated Facts (AJSSF) ¶ 1. Under the agreement, Sea–Land agreed to ship plaintiff's containers between various ports in Europe and the United States. Id. ¶ 2; Plaintiff's Cross Motion for Summary Judgment (Pl.'s Mot.), Exh. A, at 3–4. The agreement provided that each party would issue its own bills of lading, and that plaintiff would be responsible for "costs attributable to cargo" for which it issued a bill of lading. AJSSF ¶ 2; Amended Complaint filed September 28, 2000 (Am. Compl.) ¶ 41; Pl.'s Mot., Exh. A, at 9–10. The agreement also provided that any dispute arising under it would be referred to arbitration in London. Pl.'s Mot., Exh. A, at 22.

Between February 11, 1994 and June 22, 1994, 38[1] stowaways were discovered in plaintiff's containers on Sea–Land vessels. AJSSF ¶ 3. Sea–Land arranged and paid for the support and maintenance of the stowaways who sought asylum, in accordance with then current INS policy holding carriers responsible for such costs. Id. ¶¶ 4–5. Sea–Land incurred a total of $494,610 in costs associated with the stowaways, and sought reimbursement from plaintiff for its costs. Id. ¶¶ 6–17. Sea–Land then compelled arbitration under its agreement with plaintiff on the question of responsibility for the costs. Id. ¶ 19. On April 3, 1998, the arbitrator ruled that detention costs for stowaways were "costs associated with cargo" under the agreement and that plaintiff was required to reimburse Sea–Land for its expenses, since the containers had been shipped under plaintiff's bills of lading. Id. ¶ 19. Plaintiff and Sea–Land negotiated a settlement in the amount of $852,618, $675,000 of which represented "costs related to the detention and maintenance of the stowaways" and "interest" and $177,618 of which represented Sea–Land's attorneys' fees. Id. ¶ 20.

Meanwhile, in 1996, the Court of Appeals for the Federal Circuit ruled that the INS's policy of holding carriers responsible for the detention costs of stowaways was illegal. *Aerolineas Argentinas v. United States*, 77 F.3d 1564 (Fed.Cir.1996). The court held that requiring the payments constituted "an illegal exaction of moneys to meet an obligation of the government." Id. at 1578. Plaintiff, after paying Sea–Land the settlement, brought suit in this Court asking for reimbursement of the entire amount of its settlement payment to Sea–Land. Original Compl. at 14. Plaintiff has since amended its complaint to request damages of $948,013.[2] Am. Compl. at 14.

1. The original complaint stated that 42 stowaways were discovered. Complaint filed September 30, 1998 (Original Compl.) ¶¶ 35–39. The amended complaint set the number at 38. Am. Compl. ¶¶ 35–38. *See* nn. 4, 5 *infra*.

2. The judgment of $948,013 requested in the Amended Complaint appears to be the sum of $675,000 (a portion of the amount paid to Sea–Land in the arbitration settlement) and $273,013, the amount of plaintiff's legal expenses incurred

in connection with the arbitration. Am. Compl. ¶¶ 43ff. In the Amended Joint Statement of Stipulated Facts and Plaintiff's Cross Motion for Summary Judgment, however, plaintiff seeks recovery of detention and deportation costs in the amount of $494,610. AJSSF ¶¶ 6–16; Pl.'s Mot. at 5–6. The court therefore limits its consideration of plaintiff's claim for detention and deportation costs to the $494,610 claimed in Plaintiff's Cross Motion for Summary Judgment.

## II. Discussion

### A. Summary Judgment

Summary judgment is warranted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. United States Court of Federal Claims Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact that might significantly affect the outcome of the litigation is material. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The movant is entitled to summary judgment if the nonmovant fails to make a showing sufficient to establish an element of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must draw all reasonable inferences in favor of the non-movant. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. When the case is before the court on cross-motions for summary judgment, each motion is evaluated under the same standard. *Cubic Defense Sys., Inc. v. United States*, 45 Fed.Cl. 450, 457 (1999).

### B. Illegal Exaction

▬ The government is liable for an illegal exaction when it demands and receives payment "in contravention of the Constitution, a statute, or a regulation." *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002, 1007 (1967). The payment need not go to the government, however. A plaintiff may recover money that "was paid to others at the direction of the government to meet a governmental obligation" if the direction was contrary to law. *Aerolineas,* 77 F.3d at 1572–73. This court has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, to hear a claim of illegal exaction. *Clapp v. United States,* 127 Ct.Cl. 505, 117 F.Supp. 576, 580 (1954).[3]

### 1. Detention and Deportation Costs

Some of the costs at issue here are quite similar to those disputed in *Aerolineas,* in which the Court of Appeals for the Federal Circuit held that requiring airlines to pay the detention costs for illegal stowaways worked an illegal exaction. 77 F.3d at 1578. In *Aerolineas,* the airlines paid for hotel rooms, meals, security guards, and medical expenses while the aliens were awaiting resolution of their asylum requests. *Id.* at 1569–70. Plaintiff here has also requested reimbursement for those costs Pl.'s Mot. at 5–6. Defendant does not contest liability for such costs. Defendant's Reply and Opposition to Plaintiff's Cross Motion for Summary Judgment (Def.Reply) at 3.[4] AJSSF ¶¶ 6–8, 11–13.

Defendant does contest liability for other costs, however, namely the transportation costs associated with repatriating the stowaways, immigration assistance fees, and assistance with travel documents (collectively, "deportation costs"). Def. Reply at 3–4.[5] AJSSF ¶¶ 10, 14–16. Defendant argues that the *Aerolineas* court held the INS responsible for "detention and maintenance" costs, not "deportation" costs. Def. Reply at 4.

---

3. In particular, this court has jurisdiction to hear illegal exaction claims in matters involving contracts which are maritime in nature. *See, e.g., Suwannee S.S. Co. v. United States,* 150 Ct.Cl. 331, 279 F.2d 874, 876 (1960); *Seatrade Corp. v. United States,* 152 Ct.Cl. 356, 285 F.2d 448, 449 (1961); *Clapp v. United States,* 127 Ct.Cl. 505, 117 F.Supp. 576 (1954). *See generally Buck Kreihs Co. v. United States,* 192 Ct.Cl. 297, 427 F.2d 770, 777 (1970) (discussing claims founded upon "maritime nature of the contract").

4. The amount of detention costs to which plaintiff is entitled is uncertain, since plaintiff has amended its complaint to exclude four aliens whose detention costs appear to have been mistakenly included in the original complaint, and the briefing on the cross-motions for summary judgment did not take into account that amendment. Def. Reply at 3 nn. 1, 2.

5. Defendant neither contests nor clearly concedes responsibility for $2,140 paid by Sea–Land to G & W Transportation in connection with the stowaways. AJSSF ¶ 9; Def. Reply at 4 n. 3. It is unclear whether that payment involved detention costs or deportation costs. Defendant also includes payments made to Pandi Services among the expenses for which it contests liability, but the Amended Joint Statement of Stipulated Facts does not include, in its enumeration of payments, any payment made to Pandi Services. Def. Reply at 4 n. 3; AJSSF ¶ 6–16. There is additional uncertainty about the effect of the amendment of the complaint on plaintiff's damages. *See* n. 4 *supra.* Accordingly, if the parties are unable to agree, the court will determine in further proceedings the precise sum of detention and deportation costs to which plaintiff is entitled.

In *Aerolineas,* two airlines argued that the application of an Immigration and Naturalization Service (INS) regulation mandating that the airlines bear detention costs for stowaways was illegal. 77 F.3d at 1571. Prior to 1986, a statute had required carriers to pay " 'all expenses arising during [the] subsequent detention' " when aliens were detained pending asylum proceedings. *Id.* at 1570 (quoting 8 U.S.C. § 1223(b) (1982)). The statutory requirement was implemented by INS regulation. *Id.* Then, in 1986, Congress repealed the statute requiring payment by carriers, Pub.L. 99–591, 205, 100 Stat. 3341–53 (1986), and established a fund for "detention and deportation services for excludable aliens arriving on commercial aircraft and vessels." 77 F.3d at 1571 (quoting 8 U.S.C. § 1356(h)(2)(A)(v) (1986)). In 1989, INS amended its regulations to assume responsibility for the detention of aliens who arrive without documentation allowing entry or with false documents, or who are otherwise inadmissible. *Id.* INS continued to require that carriers bear detention costs for stowaways and aliens who arrive as "transit without visa" (TWOV) passengers and subsequently claim political asylum, however.[6] *Id.* The *Aerolineas* court held that the exception for stowaways and TWOV passengers violated the statute, in that it forced carriers to pay detention costs for those aliens. *Id.* at 1576, 1578. The court held that Congress, by creating the fund, clearly intended that the government, rather than the carriers, bear those costs. 77 F.3d at 1571. The statute, during the time relevant to this case, provided for the creation of a Treasury fund reimbursing the Attorney General for the cost of "detention and deportation services for: excludable aliens arriving on commercial aircraft and vessels." 8 U.S.C. § 1356(h)(2)(A)(v) (1994).

█ Defendant's argument for distinguishing deportation costs from detention costs is based on 8 U.S.C. § 1227(c) (1994), which then provided that "[t]he transportation expense of the alien's deportation shall be borne by the owner or owners of the vessel or aircraft on which the alien arrived." Def. Reply at 4. Section 1227(a)(1) provided

that carriers must bear the detention and maintenance costs for aliens who are "excluded." 8 U.S.C. § 1227(a)(1) (1994). The title of § 1227 is "Immediate deportation of aliens *excluded* from admission or entering in violation of law." 8 U.S.C. § 1227 (1994) (emphasis added). A statute's title may be considered "when [it] shed[s] light on some ambiguous word or phrase" in the statute. *Carter v. United States,* 530 U.S. 255, 120 S.Ct. 2159, 2168, 147 L.Ed.2d 203 (2000); *see also* Norman J. Singer, *Sutherland Statutory Construction* § 21.04 (5th ed.1992) ("[e]ven though the section heading is not part of the law, it can be used to aid interpretation when an ambiguity exists"). Here, the word "alien" as used in § 1227(c) is ambiguous, since, standing alone and absent other indications of legislative intent, the section could be construed to apply to "excludable" as well as "excluded" aliens. In light of the use of the term "excluded" in § 1227(a) and in the title of the section, however, the court finds that the term "aliens" in § 1227(c) refers only to excluded aliens. The stowaways at issue here were seeking political asylum and were therefore excludable under 8 U.S.C. § 1356(h)(2)(A) (1994), rather than excluded under § 1227.

█ The *Aerolineas* court distinguished aliens who are seeking political asylum and therefore are excludable under § 1356(h)(2)(A) from those who are excluded under 8 U.S.C. § 1227(a) when it required INS to bear detention and maintenance costs for excludable aliens. 77 F.3d at 1575. A similar distinction applies, the court believes, to deportation costs. The *Aerolineas* court's analysis of detention and maintenance costs therefore applies with equal force to deportation costs. Plaintiff is entitled to recover its costs associated with deporting and repatriating the stowaways.

### 2. Attorneys' Fees

█ Plaintiff also seeks as damages repayment of the costs of its arbitration proceeding in England, arguing that its attorneys' fees were "foreseeable" damages. Pl.'s Mot. at 6. Whether it was foreseeable that requir-

---

6. "Transit without visa" passengers are aliens whose travel documents permit only transit

through the airport in continuing travel to a foreign destination. 77 F.3d at 1569.

ing Sea–Land to pay detention and deportation costs for stowaways would lead to arbitration proceedings is not, however, relevant to the determination of defendant's liability for these costs. There is no foreseeability element in the doctrine of illegal exaction. *See Aerolineas,* 77 F.3d at 1573; *Fireman v. United States,* 44 Fed.Cl. 528, 536 (1999). In *Casa de Cambio Comdiv S.A. de C.V. v. United States,* 48 Fed.Cl. 137 (2000), this court recently explained that where the Treasury had failed to follow its regulations in dishonoring a check and debiting a third party's account (a failure which led the third party to debit the account of the plaintiff), the foreseeability of the third party's action did not give rise to a claim based on illegal exaction:

> One can conceive of a garden variety of situations where, for example, the government imposes a cost on an entity, that entity shifts the cost to a third party and the third party might argue the government's action in dealing with the intermediary was unconstitutional or violative of a statute or regulation. While the "injury" to a third party in these circumstances may well be reasonably foreseeable or even occur with the government's full knowledge, that, in this court's view, is [not] adequate to impose illegal exaction liability....

*Id.* at 145. Here, Sea–Land acted independently of the government in seeking reimbursement from the plaintiff under the contract, and whether it was foreseeable that it would do so in a setting where it would incur fees has no bearing on the illegal exaction inquiry.

In applying the doctrine of illegal exaction to cover the maintenance payments made by the airlines in *Aerolineas,* the Federal Circuit not only endorsed the application of the doctrine of illegal exaction to payments made to third parties, but also set limits on the nature of the payments the doctrine reaches. Illegal exactions are amounts "paid to others at the *direction* of the government to meet a governmental obligation." 77 F.3d at 1573 (emphasis added). The attorneys' fees of plaintiff in its arbitration with Sea–Land were not costs incurred at the direction of the government to meet a governmental obligation, but rather were costs of resolving a private dispute about who, as between private parties, had the obligation to pay for the support of the stowaways. Plaintiff is not entitled to recover those costs as an illegal exaction.

### 3. Prejudgment Interest

Plaintiff requests prejudgment interest on its illegal exaction claim. Am. Compl. at 14. Defendant contends that the government has not waived sovereign immunity with respect to claims for interest, and that plaintiff's claim is therefore barred. Defendant's Motion for Partial Summary Judgment at 9–12.

 Without clear congressional authorization, the United States will not pay prejudgment interest on claims against it. *Library of Congress v. Shaw,* 478 U.S. 310, 314, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). There is an exception to the rule against prejudgment interest absent statutory authorization in a claim under the Takings Clause, where "just compensation" has been interpreted as including prejudgment interest. *Shoshone Tribe v. United States,* 299 U.S. 476, 497, 57 S.Ct. 244, 81 L.Ed. 360 (1937); *United States v. Rogers,* 255 U.S. 163, 169–70, 41 S.Ct. 281, 65 L.Ed. 566 (1921). But plaintiff has brought an illegal exaction claim, not a takings claim. The jurisdictional basis for illegal exaction claims in this court is the Tucker Act, 28 U.S.C. § 1491. *Eastport,* 372 F.2d at 1007–08. Nothing in that section permits the court to award interest on an illegal exaction claim.

Takings and illegal exaction claims are conceptually distinct. Takings claims arise because of a deprivation of property that is authorized by law. *See Dureiko v. United States,* 209 F.3d 1345, 1359 (Fed.Cir.2000) ("a taking claim must be premised upon a government action that is either expressly or impliedly authorized by a valid enactment of Congress"). Illegal exactions arise when the government requires payment in violation of the Constitution, a statute, or a regulation. *Eastport,* 372 F.2d at 1007–08. This court has recently declined a similar invitation to blend the two doctrines. *Casa de Cambio,* 48 Fed.Cl. at 145–46. Plaintiff's argument that it

is entitled to prejudgment interest therefore fails.

## III. Conclusion

For the foregoing reasons, the court GRANTS plaintiff's motion for summary judgment with respect to defendant's liability for detention and deportation costs as claimed in paragraphs 6–9 and 11–16 of the Amended Joint Statement of Stipulated Facts, and otherwise DENIES plaintiff's motion. The court GRANTS defendant's motion for summary judgment that it has no liability as to plaintiff's claims for attorneys' fees and prejudgment interest. The parties shall, on or before December 28, 2000, either file a stipulation agreeing to the correct amount of the claimed detention and deportation costs, or, if the parties cannot agree, proposing further proceedings to determine the correct amount.

Each party shall bear its own costs.

IT IS SO ORDERED.